**Steven P. LINDSEY, Plaintiff–Appellant, Cross–Appellee,**

v.

**BAXTER HEALTHCARE CORPORATION, Defendant–Appellee, Cross–Appellant.**

Nos. 91–2342, 91–2475.

United States Court of Appeals, Seventh Circuit.

Argued April 1, 1992.

Decided April 27, 1992.

As Amended on Denial of Rehearing June 10, 1992.

Leigh R. Gignilliat (argued), Laurence J. Goldstein, Gignilliat & Hymen, Northbrook, Ill., for Steven P. Lindsey in No. 91–2342.

Leigh R. Gignilliat (argued), Steven A. Sigmond, Laurence J. Goldstein, Gignilliat & Hymen, Northbrook, Ill., for Steven P. Lindsey in No. 91–2475.

Mark L. Shapiro, Robert S. Letchinger (argued), Rudnick & Wolfe, Chicago, Ill., for Baxter Healthcare Corp.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and NOLAND, Senior District Judge.[*]

POSNER, Circuit Judge.

This is a suit against Baxter Healthcare under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, with a pendent count (independently supported by diversity jurisdiction) for breach of an employment contract. On cross-motions for summary judgment, the district judge dismissed the age discrimination claim but awarded Lindsey, the plaintiff, $15,512.24 for breach of contract even though Lindsey had not asked for summary judgment on that count. 757 F.Supp. 888. Both parties appeal.

Lindsey was hired by a predecessor of Baxter in 1977, when he was 31 years old, as a sales representative. Several years later he took a cut in pay to become an entry-level manager in the surgical-prod-ucts division; as "Region Manager" for Washington, D.C. he supervised the sales efforts of the sales representatives in that market. He was an outstanding manager but was criticized for calling a Baxter vice-president a "bitch" and for becoming a subject of gossip about his alleged personal indiscretions, of which more shortly. In 1986 Baxter reorganized part of its sales operation by combining several previously separate divisions, including the one in which Lindsey was the Washington Region Manager, into a new "Operating Room Division" and by creating "Area Managers" above the Region Managers. Lindsey, age 40, was passed over for appointment as an Area Manager in favor of a 32–year-old. Under the reorganization, the Area Manager was to appoint the Region Managers in his area in consultation with higher management. Lindsey was offered the position of Washington Region Manager—his old job except for the longer product line resulting from the combination of divisions—at the same pay, but declined the offer. This was in December 1986. Lindsey remained on Baxter's payroll although his duties were minimal to nonexistent. On May 4, 1987, he was informed that he was being terminated as of February 1, 1987, and would be taken off the payroll on May 8. If the sequence of dates perplexes, read on.

Because Lindsey was within the age range protected by the age discrimination law and was at least minimally qualified for the position of Area Manager yet was passed over in favor of a younger person, Baxter to stave off a trial had to set forth noninvidious reasons for its failure to appoint him. The burden would then shift to Lindsey to show either that the reasons were fishy or that, even if they seemed proper, in fact the company had been motivated by Lindsey's age in deciding not to appoint him. *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 371–72 (7th Cir.1992). Baxter was able to shift the burden, and Lindsey was not able to meet it. The company explained, reasonably enough, that while Lindsey was an excel-

[*] Hon. James E. Noland of the Southern District of Indiana, sitting by designation.

lent salesman, his human-relations skills were markedly inferior to those of the person appointed in his stead. In this age of sensitivity to the relations between the sexes in the workplace, one is hardly surprised that Lindsey should have been passed over for promotion after calling a female superior a "bitch" and after his superiors had received (according to an uncontested affidavit) "numerous reports of Lindsey's sexual indiscretions with colleagues, subordinates and even customers." His competitor, in contrast, "never put himself or others in embarrassing positions."

 The company's judgment may have been wrong. Lindsey's lawyer asks darkly, "One wonders where industry would be today if promotions were to be governed by factors other than sales and performance evaluations." Maybe nowhere. But the age discrimination law does not shift responsibility for corporate personnel decisions from corporations to trial lawyers. If the company gives a reason for its decision that is unrelated to age, the plaintiff must present evidence either that the real reason was age or that the stated reason is unworthy of belief—a mere pretext, possibly for discrimination. *Id.; Shager v. Upjohn Co.*, 913 F.2d 398, 400–01 (7th Cir.1990); *Karazanos v. Navistar International Transportation Corp.*, 948 F.2d 332, 336 (7th Cir.1991). The fact that the decision may have reflected a philosophy of personnel management with which the plaintiff's lawyer disagrees cuts no ice at all. There is nothing else in this case. No weight can be attached to an overheard comment that Baxter does not like to promote "good old boys," since any competent user of the English (or rather the American) language knows that to be a good old boy one need not be old, or for that matter good. *Stell v. State*, 711 S.W.2d 746, 748 (Tex.App.1986). No weight can be attached to the fact that of the eight new Area Managers appointed after the reorganization none was 40 or older. The applicant pool from which Area Managers were chosen consisted of Region Managers (an entry level position), 80 percent of whom were under 40. (Of course if

Lindsey had accepted the appointment, there would have been one.)

We turn to the cross-appeal. The letter that Lindsey received on May 4 said that he was being discharged as a result of the recent reorganization. Baxter regulations that had the force of contract, *Duldulao v. St. Mary of Nazareth Hospital Center*, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987), entitled employees terminated because of a reorganization to severance pay, and in the amount the district judge awarded. The company, however, argues that the form letter informing Lindsey that he was being discharged because of a reorganization contained the wrong boilerplate—in fact he had "constructively resigned" back in December when he refused to take the Region Manager's job. The company's regulations do not entitle an employee who resigns, as distinct from one who is discharged, to any severance pay. Nevertheless Lindsey was allowed to remain on the payroll, doing nothing (or virtually nothing—apparently he spent a few days breaking in his successor as Region Manager), for more than four months, collecting some $15,000 in salary which the company in effect treated as his severance pay.

 Constructive resignation is a useful, or at least a harmless, legal fiction. If a worker tells his employer that he won't do any work, but that he won't quit either, the employer is entitled to treat the worker as if he had quit, and not give him severance pay or other benefits intended for the protection of persons involuntarily terminated without fault on their part. *Patterson v. Portch*, 853 F.2d 1399, 1406–07 (7th Cir. 1988); *Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346, 1351 (9th Cir. 1984); *Bailey v. Johnsen*, 1991 WL 148166, 1991 U.S.Dist. LEXIS 10250 (N.D.Ill.1991); *Sturgess v. Negley*, 761 F.Supp. 1089, 1093–94 (D.Del.1991). Whether Lindsey's refusal to take the Region Manager's job was a constructive resignation is, no doubt, arguable. On the one hand, the company's regulations state that an employee is not entitled to severance pay if he leaves after refusing to accept the offer of a comparable position in the company, which in effect treats such a refusal as resignation—that is, as voluntary rather than involuntary

termination—and this seems a fair description of what Lindsey did. On the other hand, the letter of May 4 makes no allusion to this but instead ascribes Lindsey's departure to the company's reorganization—which in a sense, but perhaps not the relevant sense, it was, because the reorganization precipitated the sequence of events that led to Lindsey's turning down the offer of the Region Manager's job. This seems to us a classic case in which the meaning of the parties' contract does not appear with clarity on the face of a document but must be inferred from a sequence of documents illuminated by disputed evidence of practices and understandings. That is not a case which can be resolved on summary judgment. *LaSalle National Bank v. General Mills Restaurant Group, Inc.,* 854 F.2d 1050, 1052 (7th Cir.1988); *City of Clinton v. Moffitt,* 812 F.2d 341, 344 (7th Cir.1987).

■ The district judge was disturbed by the fact that since Lindsey wasn't told that the salary he was receiving after he ceased doing any significant work for the company was severance pay, he wasn't able to use it as it is supposed to be used—as money to tide you over while you look for another job. But it would be pretty foolish for an employee at will to suppose that he had a bright future at a company for which he was doing no work because he had turned down the job they offered him. He should know that his days are numbered and treat the salary he receives for his no work accordingly—as money to tide him over while he looks for his next job. A glance at the company's regulations would have told Lindsey that he was unlikely to receive severance pay after refusing the Region Manager's job; and it does seem odd that, by rejecting the Region Manager's position out of pique at being passed over for Area Manager, Lindsey should walk away with $30,000 in severance pay instead of the $15,000 to which he probably was not entitled either.

In any event, if Lindsey's theory is that the company should be estopped, by its failure to have told him back in December that he had resigned, to deny that he re-

mained employed until May 8 at which time he was terminated involuntarily by reason of the reorganization, he must prove not only reliance in fact but reasonable reliance. *Quake Construction, Inc. v. American Airlines, Inc.,* 141 Ill.2d 281, 310, 565 N.E.2d 990, 1004 (1990); *Vaughn v. Speaker,* 126 Ill.2d 150, 162, 127 Ill.Dec. 803, 533 N.E.2d 885, 890 (1988); *Dyna–Tel, Inc. v. Lakewood Engineering & Mfg. Co.,* 946 F.2d 539, 543–44 (7th Cir.1991). There is not a shred of evidence of either, let alone the uncontested evidence that would justify a judgment in his favor without a trial.

The judgment is affirmed insofar as it dismisses the age discrimination claim, and reversed (and the case remanded) insofar as it found a breach of the employment contract.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.