Mariano COLOSI, Plaintiff–Appellant,

v.

ELECTRI-FLEX COMPANY, Defendant–Appellee.

No. 91–3795.

United States Court of Appeals, Seventh Circuit.

Argued May 1, 1992.

Decided June 16, 1992.

Rehearing En Banc Denied July 15, 1992.

James N. Vail (argued), Chicago, Ill., for plaintiff-appellant.

John F. Atkinson, Dale J. Atkinson (argued), David C. Thollander, Atkinson & Atkinson, Evanston, Ill., for defendant-appellee.

Before CUDAHY, POSNER, and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

This is a suit under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, with a pendent count for breach of contract under state law, brought by Mariano Colosi against his former employer, Electri–Flex Company. The district judge granted summary judgment for the defendant on both counts and dismissed the suit.

Electri–Flex is a small manufacturer of electrical products. It is owned by the Kinander family. Colosi was vice-president in charge of manufacturing operations—meaning that he oversaw the work in the factory—when he was fired at the age of 57. Because of his age and the fact that his duties were taken over by a pair of younger men, it was Electri–Flex's burden, if it wanted to get rid of the case at the summary judgment stage, to produce reasons, unrelated to age, for its action in firing Colosi. *Lindsey v. Baxter Healthcare Corp.*, 962 F.2d 586, 587 (7th Cir. 1992); *Shager v. Upjohn Co.*, 913 F.2d 398, 400–01 (7th Cir.1990). It placed in the record nine affidavits, which portray Colosi as stubborn, irascible, and irresponsible. The most colorful accusation is that he gave one employee, who had displeased him by talking too much, a choice between a three-day suspension without pay and shouting at the top of his lungs for one hour outside the plant. (The employee chose the shouting option.) The most serious accusation is that Colosi failed to understand and use the output of a computer system that the company had installed in the hope of improving inventory control and otherwise minimizing its costs.

At this point Colosi had two ways of staving off summary judgment. *Lindsey v. Baxter Healthcare, Inc., supra*, at 587–88; *Oxman v. WLS–TV*, 846 F.2d 448, 452 (7th Cir.1988). The first was to create a genuine issue of the sincerity of the proffered reasons for his discharge: were they the real reasons, or pretexts? If the latter, the real reason may have been Colosi's age. The second route was to present direct evidence that his age had played a role in the company's decision. The record with which Colosi had to work consisted of his deposition and an affidavit by Wolbing, his understudy and (briefly) his successor, as well as the nine affidavits presented by the company.

There is no direct evidence of age discrimination. Colosi does state in his deposition that shortly before he was fired his boss twice asked when he was planning to retire and both times he replied, "Never," and Colosi asks us to infer that the company thought him too old to be working. But a company has a legitimate interest in learning its employees' plans for the future, and it would be absurd to deter such inquiries by treating them as evidence of unlawful conduct. Colosi also complains that his boss told him he was sick (though he wasn't) and ordered him to take sick leave and go to the Mayo Clinic for an examination. The day Colosi returned from his compelled "sick leave" was the day he was fired. But he does not explain the connection between the company's action and age discrimination. The Kinanders were no doubt trying to force him out (maybe they wanted to see how the plant would run without him) and they may in a clumsy way have been offering him a face-saving way out. The age discrimination law does not require firms to deal gracefully with employees they want to get rid of, though firms that do are probably sued less.

The more difficult question with respect to the age-discrimination count is whether there was a genuine issue concerning the sincerity of the company's proffered reasons for firing Colosi. Colosi points out that: not a single corporate record mentions any of his alleged shortcomings; one of the company's affidavits states that "during the period of August 1986 through October 1986 ... [the affiant]

personally observed Mr. Colosi's manners in overseeing the foremen ... [he] would yell, scream, and swear at the foremen on a constant basis," when in fact Colosi was on his forced sick leave from August 22 to October 28; and the Wolbing affidavit states that "at no time did Mr. Colosi indicate that he did not understand the computer printouts." There is a little more, and Colosi uses the forced sick leave to cast doubt on the company's bona fides in dealing with him, but these are the main items. They don't, in our view, quite create a genuine issue of material fact. Take the point about the corporate records. Electri–Flex is a small, family-owned company. It has no more than a hundred employees. Family-owned companies of this size conduct their operations with less formality than large publicly owned corporations. Blizzards of paper are one of the symptoms of bureaucracy, and bureaucracy is the plague of large, not of small, enterprises. As for the "personally observed" affidavit: It was prepared several years after the events, and the affiant may innocently have confused the dates. Maybe not. Maybe the affidavit is perjurious. We can imagine an argument that it is and that this shows that the reasons for firing Colosi given in all the affidavits are a tissue of fabrications by the Kinanders (the affidavit in question is that of a junior Kinander). Colosi did not make the argument in the district court. There he argued merely that the court should disregard the affidavit. Fine. That left eight uncontradicted affidavits enumerating the many grounds for firing Colosi. The shouting incident, for example, was and is unrebutted, indeed admitted.

■ Colosi broadens his attack somewhat in this court by saying that the issue "is whether the plaintiff's proofs of inconsistencies and implausibilities in the defendant's proffered reasons for discharge reasonably could support an inference that the defendant did not act for non-discriminatory reasons." This is followed by a list of alleged inconsistencies and implausibilities, most inconsequential but including as number 14 the Kinander affidavit described as "exceedingly suspect ... mistaken if not perjurious." Buried in this submission is an interesting general question that we haven't seen discussed before. If a party presents multiple affidavits on summary judgment, covering the same ground, and some are shown to be unworthy of belief but others are not, do those others entitle the party to summary judgment or can the falsity of some support a negative inference about the others? We should think the latter, at least in extreme cases. If (to choose a number at random) a party presents nine affidavits each saying the same thing, and eight are shown to be perjurious, we would doubt that the party was entitled to summary judgment merely because the last stood uncontradicted. But we do not understand, from the passages quoted above from his brief, that Colosi is arguing that the falsity of one Kinander's affidavit (more precisely of part of that affidavit) made any of the defendant's *other* affidavits unworthy of belief. If that is his argument, it is too sketchily made to require us to consider it. *In re James Wilson Associates*, 965 F.2d 160, 170 (7th Cir.1992), and cases cited there.

■ As for Wolbing's affidavit—the only affirmative evidence that Colosi tendered besides his own deposition—the district judge read "indicate" as "say": at no time had Colosi told Wolbing that he did not understand the computer printouts. And the judge pointed out sensibly that the fact that Colosi never confessed to Wolbing his inability to use the computer's output didn't mean he could use it. The alternative way to read the affidavit, however, and the most natural way given the context, is that Colosi never gave Wolbing any indication that he couldn't read the printouts, and Wolbing as his deputy would have picked up any such indication. Colosi would be entitled to the benefit of the doubt and therefore to the alternative interpretation if he had asked for it, but his opening brief in this court did not question the narrower interpretation. He first made the argument in his reply brief, which was too late. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1441 n. 5 (7th Cir.1992).

■ The test for whether summary judgment has been properly granted is a simple one. It is whether, if the record of the

summary judgment proceeding were the record of a trial, a jury or other trier of fact could rationally render a verdict for the nonmovant, i.e., for Colosi. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 660 (7th Cir. 1991) (en banc); *Shager v. Upjohn Co., supra*, 913 F.2d at 402–03. The answer is "no," at least given the limited use that Colosi seeks to make of the Kinander and Wolbing affidavits. With these limitations, no rational jury could conclude that Colosi had been fired because of his age.

■ We turn to the breach of contract claim. Colosi was fired on October 28, 1986 (the day he returned from sick leave), but was told that he could remain on the payroll till the end of the year. However, as a result of an error by the company's accounting department, he was removed from the payroll in the middle of December. The company refused to rectify the error. Colosi claims a contractual entitlement to his salary for the second half of December and for certain profit-sharing and vacation benefits that would have vested had he remained on the payroll until the end of the year. He asks us to infer from the company's admission that he was removed from the payroll before the end of the year in error that his contract of employment continued till then.

■ He was an employee at will, which meant that the company could discharge him without cause or even notice. It is true that even an employee at will has contractual rights. Employment at will is a contractual relationship, one which entitles the employee to all wages and other benefits that he has earned, i.e., that accrued before he was terminated. *McKnight v. General Motors Corp.*, 908 F.2d 104, 109 (7th Cir.1990). The only respect in which it differs from other employment contracts is that the contractual relationship is terminable at the will of either party. But the difference is critical here. When Colosi was fired on October 28, 1986, he ceased working, ceased earning, and ceased having any contractual relation with the company that might have entitled him to further pay. The company's promise to keep paying him until the end of the year thus stood free of any contract and, not being supported by consideration—not being in exchange either for his continuing to work or for any other benefit he might have rendered the company, or for any promise that he might have made to the company—was unenforceable. Colosi could have argued promissory estoppel had he reasonably relied, to his detriment, on the company's promise to continue his pay. *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill.2d 281, 309–10, 152 Ill.Dec. 308, 322, 565 N.E.2d 990, 1004 (1990). But he does not argue promissory estoppel. So far as appears, he did not rely on the company's promise, let alone rely on it reasonably.

■■ The company asks us to award it sanctions for Colosi's appeal, which it contends is frivolous. The appeal on the age-discrimination count is not frivolous, but the appeal on the contract count is. So feebly was the contract count pressed in this appeal, however, that we cannot believe the defendant expended significant resources in defending against it. And we are troubled by the inaccuracies, and possibly worse, in the Kinander affidavit. We are thus brought face to face with the question what the second part of the traditional two-part test for Rule 38 sanctions, "(1) the appeal is frivolous and (2) sanctions are appropriate," *A–Abart Electric Supply, Inc. v. Emerson Electric Co.*, 956 F.2d 1399, 1406 (7th Cir.1992), actually means. Rather less than meets the eye. The second part of the test is merely a reservation of discretion to withhold sanctions (*Sparks v. NLRB*, 835 F.2d 705, 707 (7th Cir.1987)) in circumstances in which the award of them would disserve the goals of Rule 38. An illustration is provided by *Brooks v. Allison Division*, 874 F.2d 489 (7th Cir. 1989), where the appellee, rather than filing a motion to dismiss the appeal as frivolous, needlessly burdened this court with a full-fledged brief on the merits, thus failing to mitigate the damages caused by the

appeal. See also *Espinueva v. Garrett*, 895 F.2d 1164, 1167 (7th Cir.1990). Rule 38 is not a grant of uncanalized discretion, *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 938 (7th Cir.1989) (en banc)—the judicial equivalent of the pardon power. Here the fact that the appellee did not (so far as we can tell) expend substantial resources to defend against the frivolous component of the appeal can surely not be held against it; nor would the denial of Rule 38 damages be a sanction tailored to the wrongfulness, if any, in filing an affidavit that may (or may not) have been perjurious.

■ The appellee shall therefore have 14 days within which to submit documentation of its expenses reasonably incurred in defending against the contract count in this court. Since the question whether to award sanctions was fully discussed in the briefs on the merits, compliance with our recently promulgated Circuit Rule 38 does not require that we allow further briefing on that question, as distinct from the question of the amount of the sanctions. The second sentence of the new rule states, it is true, that "before imposing sanctions the court will give reasonable notice to the person or persons that it is contemplating sanctioning and give those persons an opportunity to respond." But this uncompromising-seeming language must be read against the background of the preceding sentence: "The court may, *on its own or on motion of a party*, impose sanctions...." (Emphasis added.) If the court is minded to impose sanctions not requested by the appellee it must give the appellant a chance to explain why sanctions should not be imposed. But where as in this case the appellee requests sanctions in his brief, with a full statement of the reasons for the request, the appellant has reasonable notice that he may be sanctioned and an opportunity in his reply brief to explain why he should not be. The provision of additional notice by this court would be superfluous in such a case and is not required by the rule as we read it.

AFFIRMED, WITH SANCTIONS.

CUDAHY, Circuit Judge, concurring in part and dissenting in part.

Appellate judges are rarely in a position to discern the real life scenario in a summary judgment case such as this one. My conjecture is that Colosi was a "rough diamond" who apparently served his masters well in a high position in this family business for some years. Eventually, with advancing years he became too rough (and possibly less of a diamond) for their finer sensibilities and they dumped him at age fifty-seven. Although I think the case very close—particularly given one totally off-the-wall affidavit—I can join the majority on the merits.

With respect to sanctions, however, one of the tests under Rule 38 is "appropriateness." Here, on the contract claim, it seems to me there was a moral obligation to pay: the company admits that it promised the money and only an accounting error caused the shortfall. Under these circumstances, sanctions are inappropriate and, as to them, I respectfully dissent.