**Edward GUSTOVICH, et al.,**
**Plaintiffs–Appellants,**

**v.**

**AT & T COMMUNICATIONS,**
**INC., Defendant–Appellee.**

No. 91–1285.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 10, 1991.

Decided Aug. 18, 1992.

---

Mary Rose Strubbe (argued), Kevin M. Kane, Brigham, Kane & Strubbe, Waukegan, Ill., for plaintiffs-appellants.

Charles C. Jackson (argued), Camille A. Olson, Lee P. Schafer, Seyfarth, Shaw, Fairweather & Geraldson, Thomas H.W. Sawyer, James M. Staulcup, Jr., AT & T Technologies, Chicago, Ill., for defendant-appellee.

Before EASTERBROOK and RIPPLE, Circuit Judges.[*]

[*] Circuit Judge Manion recused himself after oral argument and did not participate in the decision of this case.

PER CURIAM.

Budget cuts led to the elimination of some jobs in AT & T's Access Financial Management (AFM) department in Chicago. Six first-level supervisors over 40 years of age, including the five plaintiffs, were among the casualties. Plaintiffs cried foul and brought suit under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1). The district judge accepted AT & T's claim that plaintiffs were let go because they were the weakest employees in their department and granted summary judgment in the company's favor.

The facts, understood in the light most favorable to plaintiffs, are these. Management at AT & T told the AFM department to cut its expenses by 20% in 1989. Managers in the department knew that cuts were in the offing when, in early 1989, they prepared appraisals of the first-level supervisors' 1988 performance. ("First-level supervisors" at AT & T hold the lowest managerial positions; for simplicity we call these persons "supervisors," and their superiors the "managers.") Plaintiffs Edward Gustovich, Delores Moore, Kenneth Piker, and John Venables received ratings of "partially met objectives." This was fourth of five possible ratings: "far exceeds objectives," "exceeds objectives," "fully met objectives," "partially met objectives," and "unsatisfactory." Only Venables had received such a low rating before. The fifth plaintiff, Frances Paone, was rated "fully met objectives."

After discussing matters among themselves in June and July 1989, managers declared six supervisors, including the five plaintiffs, "surplus." Manager Robert Gray then prepared "addenda" to all supervisors' 1988 performance appraisals, using identical language for those supervisors who were to be retained. On August 1 the managers told the six "surplus" supervisors that their last day was September 29 unless by then they had found employment elsewhere in the company. None did. When the dust had settled, 10 of 30 supervisors at the AFM department were in the

protected age group; before then the figure had been 16 of 36.

AT & T contends that the four plaintiffs who received "partially met objectives" ratings did not complain to the EEOC within the 300 days the ADEA gives them. 29 U.S.C. § 626(d); *Davidson v. Board of Governors*, 920 F.2d 441, 442 (7th Cir.1990). Plaintiffs' complaint is timely if measured from August 1 but not if measured from the performance ratings, which the managers announced in March 1989. Time starts to run under the ADEA when an employer communicates an adverse employment decision to the employee, not when the full consequences of that action are felt. *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir.1990). Thus these plaintiffs' time commenced no later than August 1, and not on September 29. It began to run in March only if a sub-par evaluation is an adverse employment decision, which it is not. Most negative appraisals have nothing to do with age (or other discrimination) but instead reflect poor performance. There is nothing to complain about until a poor rating carries or directly portends a loss of job or pay. "*Ricks* does not hold that the statute of limitations begins to run as soon as the handwriting is on the wall." *Cada*, 920 F.2d at 449. The limitations period therefore did not start until August 1, and all five complaints are timely.

Once AT & T put in evidence that it let plaintiffs go because they were among the weakest 6 of the 36 supervisors, they had to present some evidence from which a reasonable jury could conclude that AT & T's real reason was their age. *Colosi v. Electri–Flex Co.*, 965 F.2d 500, 502, 503–04 (7th Cir.1992); *EEOC v. Century Broadcasting Corp.*, 957 F.2d 1446, 1450 (7th Cir.1992); *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 371 (7th Cir.1992); *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 657 (7th Cir.1991) (in banc). Plaintiffs argue that they need not do this because AT & T failed to file transcripts of its managers'

depositions. They claim that Fed.R.Civ.P. 56(c)—allowing summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file" show there is no issue of material fact—bars the district court from considering anything not formally filed with the district court. Plaintiffs forfeited this argument by neglecting to present it to the district court when responding to AT & T's summary judgment motion. *Cooper v. Lane,* 969 F.2d 368, 371 (7th Cir.1992) (collecting cases). Because plaintiffs did not dispute AT & T's principal representations about what occurred at the depositions, the argument is irrelevant anyway. Cf. *Schulz v. Serfilco, Ltd.,* 965 F.2d 516 (7th Cir.1992). Plaintiffs challenged a handful of AT & T's statements in their response to its summary judgment motion, but AT & T's reply brief included excerpts of the transcripts pertinent to these disputes. The court thus had everything it needed to determine which factual assertions are in dispute and which are not.

Instead of showing that AT & T's real reason is age, plaintiffs argue that they should not have been rated below average—that they were at least average ("fully met objectives"), a rating each had received before. None but Venables had ever before been judged less than satisfactory. Had they been rated as they should have been, they contend, they would have made the cut. But a district court hearing a case under the ADEA should not be mistaken for a labor arbitrator. Incorrect ratings are not age discrimination. *Pollard v. Rea Magnet Wire Co.,* 824 F.2d 557 (7th Cir.1987); *Dorsch v. L.B. Foster Co.,* 782 F.2d 1421, 1426 (7th Cir.1986). The question is not whether the ratings were *right* but whether the employer's description of its reasons is *honest.* No matter how mistaken the managers may have been, six supervisors were going. Unless plaintiffs can show that it was age rather than some other reason (and mistaken evaluations are age-neutral reasons) that landed them among the six, they must lose.

■ Plaintiffs submitted affidavits averring that they were "at least adequate" employees. They claim they are better workers than their supervisors say and that they were never told their jobs were in jeopardy. An employee's self-serving statements about his ability, however, are insufficient to contradict an employer's negative assessment of that ability. *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464–65 (7th Cir.1986); *Williams v. Williams Electronics, Inc.,* 856 F.2d 920, 924 (7th Cir.1988). Such statements may create a material dispute about the employee's ability but do nothing to create a dispute about the employer's honesty—do nothing, in other words, to establish that the proffered reason is a pretext for discrimination. *Benzies v. Illinois Department of Mental Health,* 810 F.2d 146 (7th Cir.1987). Especially not when the employer has never contended that the workers were "unsatisfactory" in the sense that their jobs were in danger in placid times. AT & T's point was not that plaintiffs couldn't do their jobs, but that they were in the bottom sixth of a group of supervisors all of whom were performing at a level sufficient to satisfy the firm. Proof that plaintiffs were considered adequate employees before the budget cut therefore does not suggest that AT & T's explanation masks age discrimination. *Aungst v. Westinghouse Electric Corp.,* 937 F.2d 1216, 1223 (7th Cir.1991).

■ To make progress, the plaintiffs had to come up with evidence implying that the performance evaluations had been "cooked" in order to do in the older workers. One method would have been to show that the managers expressed discriminatory attitudes, or acted in discriminatory ways, on other occasions. There is no such evidence. The only thing that comes close is that in early June 1989 (*after* the 1988 ratings had been awarded) the managers called headquarters to obtain the birth dates of all supervisors. (AT & T says that these calls were made in July, but the difference does not matter.) AT & T asserted in the district court, and plaintiffs conceded, that company policy required managers to complete employment profiles, including ages, of all supervisors being con-

sidered for termination (or, to use AT & T's euphemism, "force management"). Knowledge of a worker's age does not support an inference of age discrimination, and knowledge is all the phone calls show.

The other common method of piercing the employer's explanation is to compare the firm's treatment of similarly situated employees of different ages. Gustovich, Moore, Piker, and Venables attempt to undermine their unsatisfactory ratings for 1988 by comparing comments they received with comments appearing on some younger coworkers' appraisals. Manager Robert Gray criticized Piker for shortcomings in management and organizational skills; Piker replies that Gray found faults in other employees too. For instance, Gray wrote that Merv Adkins, one of Piker's peers who was retained, "should take more initiative and be more willing to make suggestions and assume a leadership role." The remaining plaintiffs make similar comparisons between their own appraisals and those of other employees written by other managers. Put to one side the difficulty of comparing appraisals made by different managers. That managers criticized employees judged generally satisfactory is hardly surprising. Constructive criticism is an important managerial tool. Evaluations at this level of generality ("See, X was criticized too") do not make the cases comparable and so do not support an inference that age rather than the managers' estimates of plaintiffs' ability underlies the 1988 ratings.

These considerations also doom Paone's claim that AT & T's stated reasons for firing her are pretextual. Recall that Paone, unlike the other four plaintiffs, received a "fully met objectives" rating for 1988. AT & T asserts that the managers considered Paone and her 35–year–old coworker Mary Ann Williams to be at "the low end of satisfactory". Paone offers no evidence challenging this appraisal. Although Williams was judged to be weak in knowledge and skills because of her short tenure with the group, AT & T contends that she was retained in preference to Paone because of her previous employment with Gray and her "excellent organization-al skills". Paone points out that these supposed skills are not mentioned in either Williams' 1988 appraisal or a draft 1989 addendum, which evaluated Williams as only marginally satisfactory. But this gets us nowhere, for the differences between No. 30 and No. 31 in a group of 36 will be slight, identified poorly if at all in a paper record brimming with shallow platitudes and equally shallow criticisms rather than numerical indicators. To repeat, the question is not whether the managers displayed skill in expressing subtle gradations in the supervisors' performance, but whether the managers' explanation is honest rather than fabricated to hide discrimination. Williams' 1988 appraisal reports that she is new to the group and is adequately acclimating herself; the addendum repeats that she is new and states that while she is performing satisfactorily she is deficient in "required AFM skills". Nothing in either document suggests that Williams lacks organizational skills or otherwise contradicts the managers' description of their reasoning. Paone insists that the only negative comment in her 1988 appraisal is that she is hindered by her lack of technical knowledge and that she attempted to correct this deficiency by taking the classes her supervisor recommended. Education, commendable though it is, does not undermine the managers' contention that they honestly believed Williams to be the marginally better employee.

At oral argument plaintiffs directed us to the affidavits of coworkers who asserted that the cutbacks were made with an eye toward pruning the work force of its older members. Al Nevison and Ted Kolke, two supervisors who retired under an enhanced pension plan shortly after this round of layoffs, thought that the combination of RIF with a sweetener was designed to get rid of the older and more expensive employees. When acting on a motion for summary judgment the judge considers only evidence that would be admissible at trial. Statements of lay witnesses are admissible only if based on personal knowledge or inferences "grounded in observation or other first-hand personal experi-

ence." *Visser*, 924 F.2d at 659. These affidavits do not satisfy that standard. Nevison does not claim to have overheard the managers making judgments based on age. He says only that manager Daniel Moffett "did not want to listen to or associate with his supervisors unless they were his favorites. His favorites were all younger supervisors than myself." Concluding from this that Moffett discriminated against plaintiffs because of their age would require the sort of "amateur psychoanalysis" we rejected in *Visser*. Nevison's claim that Moffett criticized his performance after the new pension plan was announced and asked him if he planned to retire is based on personal knowledge and hence admissible, but not evidence of unlawful conduct. *Colosi*, 965 F.2d at 502. Not even a flight of fancy can span the gap between Moffett's criticisms of Nevison and the decision made months earlier to terminate plaintiffs. Kolke's opinions do not require separate analysis. His deposition relates that the cutbacks seemed to be accompanied by retirement plans. He stated that "[a]fter awhile you become a little paranoid because it would seem that the forced reductions ... were aimed at the older workers." But why? He did not say, and the existence of attractive retirement plans is no proof of age discrimination; to the contrary, it suggests favoritism for older workers, as younger workers cannot take advantage of them. See *Hamilton v. Caterpillar Inc.*, 966 F.2d 1226 (7th Cir.1992) (favoritism for older workers in early retirement plans does not violate ADEA); *Henn v. National Geographic Society*, 819 F.2d 824 (7th Cir. 1987) (pressure to retire created by early retirement plans does not violate ADEA when employees are free to keep working; an offer is not illegal because too lucrative to turn down). Kolke conceded of his own supervisor, Kerin Montgomery: "I don't know that she's ever knowingly discriminated against anybody".

Is AT & T's explanation undermined by the post-pruning addenda to the 1988 performance appraisals? Although the addenda for the plaintiffs indicated their perceived deficiencies, the addendum for each retained employee parroted that the employee's 1989 performance was consistent with that of 1988, which, combined with the employee's "knowledge of the access environment and above average skills ... substantiate[s] a 'RETAINED' banding." These additions show the managers' dedication to bureaucratic ways and speech, little else. Lack of individualization frustrates comparison of the retained employees' 1989 performances, but plaintiffs do not suggest that any of these employees' performances had gone downhill in the first half of 1989. Formulaic addenda for the 30 retained supervisors are functional equivalents of silence—for saying the same thing about everyone, like saying nothing about anyone, conveys no information. AT & T must give a reason for terminating older employees that is unrelated to their age, but it need not explain in detail its evaluation of other employees.

Plaintiffs tell us that their failure to secure other positions within AT & T between August 1 and September 29 shows that they were discriminated against because of age. Yet they present no evidence to show how these later decisions were made. Moreover, plaintiffs' inability to find other work in the company is consistent with AT & T's proffered reason for their discharge—they were the poorest performers in their department—and inconsistent with a belief that the managers of the AFM department were discriminating. For if they were indeed good employees, and managers elsewhere in AT & T were willing to evaluate them on merit, they would have caught on. Of course if *everyone* was discriminating against older workers, then doors closed elsewhere are just more discrimination rather than a reflection on their skills, but not a shred of evidence shows that the process of evaluating their transfer requests was discriminatory.

 One final contention and we are done. On October 19, 1989, three weeks after their final days on the job, AT & T announced a new pension plan under which at least three of the plaintiffs would have been eligible for immediate retirement. Retirements induced by this plan could

have removed six supervisors from the AFM department without firing the plaintiffs. Why plaintiffs believe this says anything about the managers' reasons for choosing the six they did is a mystery. Attractive retirement options do not violate the ADEA. See *Henn* and *Hamilton*. Using early retirement plans to prune the rolls almost certainly would have raised the average age of those who departed. Our circuit has observed that wage discrimination can be a proxy for age discrimination, so that lopping off high salaried workers can violate the ADEA—although the circumstances under which this holds true remain to be determined. See *Visser*, 924 F.2d at 658, and, e.g., *Finnegan v. Trans World Airlines, Inc.*, 967 F.2d 1161 (7th Cir.1992); *Metz v. Transit Mix, Inc.*, 828 F.2d 1202 (7th Cir.1987). Plaintiffs have presented no evidence that the managers chose supervisors whose wages were higher than average for the AFM division, or that the change in the wage-age profile would have been different had AT & T used early retirement as its sole tool. So they have not laid even the groundwork for a claim of disparate impact. They filed and prosecuted this as a case of disparate treatment, which they failed to prove.

Plaintiffs have pointed to many facts and events that are *consistent* with age discrimination but have presented no evidence that age *actually motivated* AT & T's decision to terminate them. Whether or not their skills were under-appreciated, their age was not held against them—and age is the only consideration the ADEA puts off limits.

AFFIRMED.