45 F.3d 432
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Samuel NABAT, Plaintiff-Appellant,
v.
AETNA CASUALTY AND SURETY COMPANY, Defendant-Appellee.
 No. 93-3757.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 14, 1994.
Decided Jan. 9, 1995.
 
 Before GODBOLD,[1] WOOD, Jr. and COFFEY, Circuit Judges.
 
 ORDER
 
 1
 Samuel Nabat, a former insurance agent for Aetna Casualty and Surety Company, brought this action alleging that Aetna eliminated his position as product manager, terminated his employment, and refused to offer him another position within the company because of his age (58 years old), in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Secs. 621 et seq. The district court concluded that no reasonable jury could have found that age was a determining factor in Aetna's employment decisions and granted summary judgment for Aetna. Nabat appeals. We affirm.
 
 I. BACKGROUND
 
 2
 In 1973, Samuel Nabat was hired by Aetna Casualty and Surety Company ("Aetna") as a general life insurance agent. At the time, Aetna's insurance business was organized into two separate and distinct operations: the life insurance lines, which included life, individual health, and disability insurance, and the property and casualty lines, which included automobile and homeowners insurance.
 
 
 3
 In 1982, when Aetna restructured its nationwide operations and merged the personal life insurance lines with the personal automobile and homeowners insurance lines, the company promoted Nabat to the position of marketing officer manager for its Des Plaines, Illinois office. In this position, Nabat supervised a staff of employees who worked with independent agencies selling Aetna personal life, health, and casualty products. Nabat also recruited, trained, and supervised agents from Aetna's Prime Agent Program, which was designed to attract and train individuals to sell Aetna products.
 
 
 4
 Between 1989 and 1991, in response to changing competitive conditions in the insurance industry, Aetna conducted a series of nationwide corporate reorganizations resulting in job eliminations, terminations, and an overall reduction in the company's workforce. During the first phase of the reorganization in the spring of 1989, Nabat's position of marketing office manager was eliminated. In its place, Nabat accepted the position of producer development manager in the Illinois branch's Prime Agent Program. The duties of this position included recruiting, training, and supervising producer development specialists.
 
 
 5
 During the second phase of the reorganization, in the fall of 1990, Aetna restructured its personal insurance lines operations in its Illinois branch and separated the life insurance division from the automobile and homeowners insurance lines in its attempt to streamline the overall operation. Nabat retained his position of producer development manager in the newly-restructured Illinois branch, but his staff was reduced from eight to two employees.
 
 
 6
 On October 26, 1990, Aetna announced yet a third phase of its corporate-wide reorganization to take effect in March of 1991. This time, Aetna's domestic insurance operations would cease to be organized along divisional lines and would be replaced by sixteen strategic business units ("SBUs"). In addition, the Illinois branch personal lines were reorganized, resulting in the closing of the Minneapolis office, the downsizing of the Milwaukee office, and the consolidation of Aetna's Midwest underwriting, marketing, and administrative operations into the Downers Grove, Illinois office. Finally, Aetna decided to eliminate its Illinois Prime Agent Unit and, ultimately, its nationwide Prime Agent Program. Aetna predicted that this third restructuring would eliminate 2,600 jobs. Among the jobs eliminated was Nabat's position as producer development manager.
 
 
 7
 Nabat was considered for four different post-reorganization positions in the marketing area. Aetna used a ranking process to select the best qualified person by identifying several "critical competencies" for each new position. The ranking process resulted in the creation of a slate of potential candidates, which included "incumbents" for the position, that is, individuals who held similar jobs under the prior structure. Based on their most recent Performance and Development Review ("PDR"), the candidates for each position were listed according to their numerical scores on a Candidate Comparison Worksheet ("CCW").[2] The selection material, once completed by local management, in Nabat's case, supervisor William Dailey, was sent to Aetna's human resource officials at the home office in Hartford, Connecticut for their review and approval to ensure the fairness, accuracy, and consistency of the selection process. The highest-ranking candidates from the CCWs were offered the new jobs while the employees not selected were terminated. No offer was extended to Nabat. As a result, Nabat was terminated. Aetna notified Nabat of his termination on July 1, 1991. At the time of the termination, Nabat was fifty-eight years old.
 
 
 8
 On February 6, 1992, Nabat filed this lawsuit in which he claimed a violation of the ADEA. On March 16, 1993, Aetna moved for summary judgment pursuant to Fed.R.Civ.P. 56. By memorandum opinion and order entered on September 30, 1993, the district court granted Aetna's motion for summary judgment. Nabat thereafter moved the court to reconsider its grant of summary judgment to Aetna based on newly-discovered evidence, which consisted of affidavits from fourteen of Nabat's former co-workers at Aetna. The district court held a hearing, after which it denied Nabat's motion for reconsideration, concluding that the affidavits were not new evidence because they could have been adduced during the pendency of the summary judgment motion. Nabat appeals from the district court's decision on his ADEA claim and its denial of his motion for reconsideration.
 
 II. ISSUES
 
 9
 The issues presented on appeal are: (1) whether the district court erred in granting summary judgment for Aetna, and (2) whether the district court abused its discretion in denying Nabat's motion for reconsideration.
 
 III. DISCUSSION
 A. Standard of Review
 
 10
 We review the grant of summary judgment de novo. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider the factual record in the light most favorable to the party opposing the motion for summary judgment, in this case, Nabat. Id. at 255. Summary judgment is proper when the pleadings before the district court show that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir.1993); McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 370-71 (7th Cir.1992). We therefore will affirm the decision of the district court "only if, had the record before that court been the record of a complete trial, the defendant would have been entitled to a directed verdict." Sarsha, 3 F.3d at 1038.
 
 
 11
 "[A] terminated plaintiff's ultimate burden in an age discrimination case is to prove that he was discharged because of his age." Oxman v. WLS-TV, 846 F.2d 448, 452 (7th Cir.1988). The plaintiff may prove age discrimination either by introducing direct or circumstantial evidence that his age was the determining factor in the termination, or by presenting indirect evidence utilizing the burden-shifting method of proof set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), for Title VII cases and later applied to ADEA cases. Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1122 (7th Cir.1994); McCoy, 957 F.2d at 371; Oxman, 846 F.2d at 452. Where, as here, the plaintiff has been terminated pursuant to a reduction in the workforce ("RIF"), he may establish a prima facie case of age discrimination by demonstrating that (1) he was a member of the protected age group (between ages 40 and 70); (2) he was meeting his employer's legitimate expectations; (3) he was terminated; and (4) younger employees were treated more favorably. Oxman, 846 F.2d at 455; Aungst v. Westinghouse Elec. Corp., 937 F.2d 1216, 1220 (7th Cir.1991). If the plaintiff succeeds in establishing a prima facie case, a rebuttable presumption of discrimination arises and the burden of production shifts to the defendant to articulate a nondiscriminatory reason for the termination. Oxman, 846 F.2d at 453; Aungst, 937 F.2d at 1220. Once the defendant gives a lawful reason for its actions, the presumption of discrimination is rebutted, shifting the burden back to the plaintiff to establish that the defendant's proffered reasons are pretextual. Oxman, 846 F.2d at 453; Aungst, 937 F.2d at 1220. In demonstrating pretext, a reduction-in-force plaintiff bears no greater burden of proof than any other ADEA plaintiff. Oxman v. WLS-TV, 12 F.3d 652, 657 (7th Cir.1993); Anderson, 13 F.2d at 1122-24; Robinson v. PPG Indus., Inc., 23 F.3d 1159, 1163 (7th Cir.1994). The plaintiff may satisfy the pretext prong of McDonnell-Douglas by showing "either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." Robinson, 23 F.3d at 1163 (quoting La Montagne v. Am. Convenience Prod., Inc., 750 F.2d 1405, 1409 (7th Cir.1984)).
 
 B. Direct Evidence of Discrimination
 
 12
 Nabat argues that he presented ample direct evidence that his age was a determining factor in Aetna's decision to terminate him. Specifically, Nabat contends that his supervisor, William J. Dailey, made statements which indicated that the termination was age-based. For example, Dailey, in rejecting a sixty-two year old applicant in favor of a twenty-four year old applicant, stated that the older applicant "plans to retire in the next two to three years and I was looking to make an investment in someone for the long term." (R. 39 at 7). Dailey also stated that Aetna's replacement of older workers with younger ones was "the wave of the future at The Aetna." (R. 59 at p 7(f)). In addition to these statements, Nabat contends that Dailey, Rice C. Wolf, and Peter Treutlein singled him out because of his age.[3]
 
 
 13
 The district court properly determined that Nabat "failed to present a genuine issue of material fact for trial under the direct method" of proof because Aetna's process for selecting individuals for post-reorganization positions did not include consideration of the candidates' ages. (Mem.Op. at 6). In particular, as the district court noted, the Candidate Comparison Worksheets used to evaluate and select Aetna employees for the new positions did not mention Nabat's age. (Mem.Op. at 6). The only direct or circumstantial evidence presented by Nabat consisted of Wolf's and Dailey's comments. These comments were stray remarks that "d[id] not make any reference to Nabat's age," but merely "refer[red] to [Nabat's] many years of service with [Aetna] and eligibility for retirement." (Mem.Op. at 7-8). The cases in this circuit make clear that remarks suggesting retirement is an attractive option do not support an inference of age discrimination. See, e.g., Gustovich v. AT & T Communications, Inc., 972 F.2d 845, 850 (7th Cir.1992) (per curiam) ("[T]he existence of attractive retirement plans is no proof of age discrimination; to the contrary, it suggests favoritism for older workers, as younger workers cannot take advantage of them.") (citing Hamilton v. Caterpillar Inc., 966 F.2d 1226 (7th Cir.1992), and Henn v. Nat'l Geographic Soc'y, 819 F.2d 824 (7th Cir.), cert. denied, 484 U.S. 964 (1987)).
 
 C. Indirect Evidence of Discrimination
 
 14
 The district court found, and Aetna did not dispute, that Nabat established a prima facie case of discrimination: he was a member of the protected 40 to 70 age bracket, performed his job to Aetna's satisfaction, and suffered adverse employment decisions when Aetna eliminated his position, terminated him, and did not offer him a position under the SBU regime. (Mem.Op. at 9). The district court also found that Aetna provided a legitimate, nondiscriminatory reason for its employment decisions--that Aetna terminated Nabat pursuant to a reduction in force and corporate reorganization that eliminated Nabat's position and retained only the highest-ranking candidates in the available positions. (Mem.Op. at 12). The issue before the district court on summary judgment, and before this court on appeal, is whether Nabat carried his burden of establishing that Aetna's proffered reasons for terminating him during the reduction-in-force and refusing to rehire him for positions that subsequently became available were pretextual. (Mem.Op. at 13). In other words, Nabat must "produce evidence from which a rational factfinder could infer that [Aetna] lied about its proffered reasons for [Nabat's] dismissal." Schultz v. General Electric Capital Corp., Nos. 93-3273 & 93-3321, slip op. at 8 (7th Cir. Oct. 5, 1994) (quoting Anderson, 13 F.3d at 1124) (internal quotations omitted).
 
 
 15
 In his attempt to show pretext, Nabat initially argues that Aetna did not retain the highest-ranking candidate for each job position because "the ranking process was conducted after the decision had been made to terminate Mr. Nabat's employment and was nothing more than a fabricated attempt to justify the forthcoming termination." (Br. 19). The district court found nothing in the record to support Nabat's position that the ranking system was fabricated. The undisputed evidence reveals that for each open position, Aetna ranked Nabat and the other candidates according to their scores in various competency categories deemed essential to performing their new positions. The selection decisions were based strictly on the candidates' relative rankings. (Mem.Op. at 20-21). All of Aetna's employees, including those not within the protected age group, were evaluated and ranked under the same methodology. Based on this evidence, the district court determined that Aetna used a rational, nondiscriminatory process to select employees for its post-reorganization positions. (Mem.Op. at 26). While Aetna's qualification assessments involved a certain degree of subjectivity on the part of the reviewing manager, the district court properly noted that "a subjective assessment is not per se illegal or per se indicative of illegal motive." (Mem.Op. at 21). Giacoletto v. Amax Zinc Co., 954 F.2d 424, 427 (7th Cir.1992). As this court has previously explained:
 
 
 16
 The employee doesn't get to write his own job description. An employer can set whatever performance standards he wants, provided they are not a mask for discrimination on forbidden grounds such as race or age. He can set unrealistic standards and fire an employee for not being able to meet them; ... He can be as arbitrary as he wants--he just cannot treat an older employee more harshly than a younger one.
 
 
 17
 Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1571 (7th Cir.1989) (citations omitted); see generally Perfetti v. First Nat'l Bank, 950 F.2d 449, 457-58 (7th Cir.), cert. denied, 112 S.Ct. 2995 (1992). The district court therefore properly concluded that "Aetna's ranking system is not probative of pretext." (Mem.Op. at 26).
 
 
 18
 Nabat next argues that he outscored and outranked younger candidates with less seniority who were offered positions at Aetna. We agree with the findings of the district court appraising Aetna's assessment of Nabat's skills and shortcomings. (Mem.Op. at 24, 25). Nabat was considered for four different post-restructuring positions in the marketing area, but his ranking failed to qualify him for selection to any of these new positions. "[L]eft only with Nabat's self-serving testimony that he [was] more qualified than the individuals chosen," the district court properly concluded that "[t]his [was] neither enough to contradict Aetna's assessment of [Nabat's] qualifications nor enough to raise an inference of discriminatory intent." (Mem.Op. at 20) (footnote omitted). See, e.g., Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1460 (7th Cir.1994) (the plaintiff's argument that she was performing her duties adequately did not raise a factual question about an employer's honest assessment of inadequate performance) (collecting cases). Nabat has failed to show that any subjective facts Aetna might have considered were insufficient to justify the company's employment decisions.
 
 
 19
 Nabat also argues that the selection of candidates Marge Petronis and Bob Pagel for the Marketing Representative positions demonstrates that Aetna did not select the highest-ranking candidates for open positions. This argument lacks merit. While some of the candidates did rank above Petronis and Pagel, the undisputed facts establish that those candidates were offered either a Marketing Representative position or another position with Aetna. As we have stated, "[e]mployers often make job offers to candidates they believe to be best qualified for the job, even though they know that the candidate has reasons that may incline him not to accept." LaMontagne, 750 F.2d at 1411.
 
 
 20
 Nabat further argues that he should have been offered other positions that opened up after the termination of his employment. Nabat, however, has produced no evidence showing that Aetna had a policy of filling these positions with former employees or of treating former employees more favorably in the application process. (Mem.Op. at 27). The undisputed facts reveal that Aetna had absolutely no obligation under its hiring procedures to provide preferential rehire rights. That being so, the district court properly concluded that "Aetna's failure to treat Nabat more favorably than other job applicants does not give rise to an inference of age discrimination or pretext." (Mem.Op. at 27-28).
 
 
 21
 Finally, even if Aetna failed in its attempt to hire only the highest-ranking candidates, such a failure does not establish any causal connection between Nabat's termination and age discrimination. "The question is not whether the ratings were right but whether the employer's description of its reasons is honest." Gustovich, 972 F.2d at 848; see McCoy, 957 F.2d at 373 ("[W]e do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [the ADEA does] not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior."). A business termination which is ill-considered is not a pretext for age discrimination. Schultz, Nos. 93-3273 & 93-3321, slip op. at 9 ("We do not question an employer's good faith business decision."); Lindsey v. Baxter Healthcare Corp., 962 F.2d 586, 588 (7th Cir.1992) ("[T]he age discrimination law does not shift responsibility for corporate personnel decisions from corporations to trial lawyers."), cert. denied, 113 S.Ct. 442 (1992); McCoy, 957 F.2d at 373 ("[E]ven if [an employee] was the best possible person for the job, as long as [his employer] honestly believed he was not, its business judgment will not be second-guessed by federal courts applying the ADEA."). Nabat has failed to demonstrate that Aetna's business judgment in terminating his employment was either an attempt to select employees on the basis of age-related considerations or was not genuinely and honestly made. Dorsch v. L.B. Foster Co., 782 F.2d 1421, 1426 (7th Cir.1986).
 
 
 22
 In sum, the record is devoid of evidence suggesting that Aetna, in making its selection decisions, discriminated against Nabat on account of his age. The district court properly ruled that Nabat failed to show that Aetna's reasons for its employment decisions were pretextual.
 
 D. Denial of Motion for Reconsideration
 
 23
 "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." Keene Corp. v. Int'l Fidelity Ins. Co., 561 F.Supp. 656, 665 (N.D.Ill.1982), aff'd, 736 F.2d 388 (7th Cir.1984). "Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during the pendency of the summary judgment motion." Id. See also DeBruyne v. Equitable Life Assurance Soc'y, 920 F.2d 457, 471 (7th Cir.1990); Manor Healthcare Corp. v. Guzzo, 894 F.2d 919, 922 n. 4 (7th Cir.1990). To support a motion for reconsideration based on newly discovered evidence, the moving party must "show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence [during the pendency of the motion]." Engelhard Indus., Inc. v. Research Instrumental Corp., 324 F.2d 347, 352 (9th Cir.1963), cert. denied, 377 U.S. 923 (1964). Disposition of a motion for reconsideration is within the sound discretion of the district court, and its ruling will not be reversed absent an abuse of that discretion. Billups v. Methodist Hosp., 922 F.2d 1300, 1305 (7th Cir.1991).
 
 
 24
 The district court, in denying Nabat's motion for reconsideration, stated:
 
 
 25
 I have looked at the affidavits and there is nothing in the affidavits which would indicate to me that their production could be considered new evidence. Indeed, generally speaking, the incidents to which they refer occurred in the past; I don't think that their identities were difficult to discover; and, indeed, the collective picture painted by the affidavits is of a company engaged in systematic antiage bias to achieve a very specific financial goal, which is to reduce the burdens on--reduce the retirement benefit burden of Aetna. And in my view the failure to produce them earlier, the failure to inquire earlier is just inexplicable. Assuming things are as bad as the affidavits say they are, then there is no reason why this should not have been before me earlier.
 
 
 26
 Sometimes it happens that some single witness comes forward, some document is discovered, somebody put something over the transom or under the door, and a plaintiff or defendant comes in and says, look, maybe technically I could have discovered this, but really it was very deeply buried and there was no way I could realistically be expected to find it even though I made an effort.
 
 
 27
 The trouble with these affidavits is they paint the picture of the plaintiff who had an embarrassment of riches as far as evidence goes, and there is really no explanation, no legally-acceptable explanation for the failure to present it earlier on the summary judgment and it is now too late.
 
 
 28
 (Vol. II, Tr. 3-4).
 
 
 29
 The district court correctly decided that the affidavits were not new evidence. The identities of the affiants were all known to Nabat long before Aetna filed its motion for summary judgment. For example, three affiants, Timothy Montania, Nick Fragale, and June Cirone, were mentioned in Nabat's complaint. Two other affiants, Glen Hedberg and Joyce Misheikis, were mentioned by Nabat in his deposition testimony. Assuming arguendo that Nabat did not learn about the identities of the remaining affiants in the course of discovery, which lasted nearly a year, Nabat certainly had plenty of time to obtain their names during the six-month period between the filing of the motion for summary judgment and its disposition by the district court. Nabat has not offered an adequate explanation for why he did not submit the affidavits earlier, and after reviewing the record, we perceive none. Accordingly, we are of the opinion that Nabat's failure to attach the affidavits to his opposition to Aetna's motion for summary judgment failed to transform those late-filed documents into "newly-discovered evidence" such as would warrant relief from the judgment. School District No. 1J, Multnomah County, Oregon v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir.1993) (collecting cases), cert. denied, 114 S.Ct. 2742 (1994).
 
 
 30
 Even if the affidavits were new evidence that could not have been produced during the pendency of the summary judgment motion, the affidavits failed to conform to the standards of Rule 56(e) of the Federal Rules of Civil Procedure. Rule 56 requires that the supporting evidentiary affidavits "shall be made on personal knowledge, set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). Much of the material contained in the affidavits was not made on personal knowledge. Rather, it consisted of pure speculation about Aetna's motives for terminating Nabat. Mere speculation is not enough to satisfy the requirements of Rule 56(e) in the absence of factual support. E.g. Karazanos v. Navistar Int'l Transp. Corp., 948 F.2d 332, 337 (7th Cir.1991); Visser v. Packer Eng'g Assoc., Inc., 924 F.2d 655, 659-60 (7th Cir.1991) (en banc); Palucki, 879 F.2d at 1572. In addition, the affidavits stated that matters contained therein were true "on information and belief." This form of verification is improper. See Price v. Rochford, 947 F.2d 829, 832 (7th Cir.1991) (affidavits stating that matters contained therein "are true on information and belief" held insufficient for purposes of opposing summary judgment, despite initial representations that the statements are made "under oath" and "under penalty of perjury"). The affidavits were thus not competent evidence within the parameters of Rule 56(e), and could not have been considered on summary judgment. The district court was well within its discretion in denying Nabat's motion to reconsider the grant of summary judgment for Aetna.[4]
 
 IV. CONCLUSION
 
 31
 Viewing the record and all the inferences drawn from it in a light most favorable to Nabat, we hold that there are no genuine issues of material fact regarding the claim of age discrimination. We conclude that the district court properly granted summary judgment in favor of Aetna. The decision of the district court is
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 The Honorable John C. Godbold, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation
 
 
 [2]
 The PDR evaluated employees on management competencies, such as the use of AMP-direction-setting, leadership, development of people, computer proficiency and system-building, communication skills and adaptability. (Mem.Op. at 21 n. 11). The CCW assessed an employee's situational competencies in ten areas: agency management skills, agent recruitment/selection/training, advanced marketing techniques, life product knowledge, life marketing concepts/programs, technical life insurance sales knowledge, life industry/competitor knowledge, risk-taking, and self-motivation. (Mem.Op. 20). The candidates were ranked from one (limited command of the competency) to five (superior command of the competency). (Mem.Op. 20)
 
 
 [3]
 According to Nabat, Wolf asked him, "Sam[,] what would it take for you to take early retirement." (App. 069). Dailey told Nabat that, "Sam, you have enough. You don't need to work anymore. You should retire." (App. 076)
 Nabat has waived any argument that Peter Treutlein (or Thomas Bayley and M. Jerome Houghton) made age-related comments because he did not raise it before the district court. Gustovich v. AT & T Communications, Inc., 972 F.2d 845, 848 (7th Cir.1992) (per curiam).
 
 
 [4]
 To the extent Nabat relies on these affidavits in his appellate brief, we have declined to consider them and have not relied on the affidavits in deciding this case