2 F.3d 1153
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
John MUELLER, Plaintiff/Appellant,
v.
GREENLEE TEXTRON INC.,* Defendant/Appellee.
 No. 93-1256.
 United States Court of Appeals, Seventh Circuit.
 Argued Aug. 4, 1993.
Decided Aug. 18, 1993.
 
 Before FLAUM, EASTERBROOK and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 John Mueller lost his job as a computer programmer at Greenlee Textron Inc. (Greenlee) through a reduction in force (RIF) and was unable to find further employment in the company. He was nearly 65 years old at the time. He brought an action against Greenlee, pursuant to the Age Discrimination in Employment Act (ADEA) 29 U.S.C. Sec. 621 et al., alleging that Greenlee discriminated against him because of his age. The district court granted summary judgment in favor of Greenlee. Mueller appeals.
 
 I.
 
 2
 John Mueller began working for Greenlee Tool Company in 1975. He was originally hired to help implement a new Honeywell computer software package into Greenlee's existing data bases. In late 1982 or early 1983, Mueller worked in a temporary position as a control clerk. In mid-1983, Hanson invited Mueller to become the department's third-shift computer operator. Mueller accepted the position and worked in the operations department as a programmer. In November of 1985, Mueller's job title was changed from computer programmer to senior computer operator.
 
 
 3
 Greenlee purchased a new computer system in 1987, and in 1988 determined that the new computer would require only one shift-computer operator. At the time of the purchase, Greenlee employed three shift computer operators: Mueller, James Boumgarden, and Bessie Hufstedler. Both Boumgarden and Hufstedler were 41 years old. The new on-line system did not require as many operators to run the system. Hanson selected Boumgarden in the fall of 1988 to remain as the sole computer operator, thereby eliminating the other shift computer operator positions. Mueller admitted that Boumgarden was a more experienced computer operator, but Mueller took issue with the fact that he had more seniority at Greenlee than Boumgarden.
 
 
 4
 Prior to the announcement that only one computer operator would be retained, Hufstedler applied for a vacant position in the Traffic Department. She received an offer for the position in February of 1988 which she accepted. At the time of her transfer, Hufstedler received a merit increase in her salary even though her new position had a lower salary grade level and range than her previous position. Hufstedler testified in her deposition that at the time she sought the new position, she did not know that her position as a computer operator would be eliminated. She received no assistance from Greenlee management in locating the new position. Hufstedler began her new position in February of 1988.
 
 
 5
 When Mueller learned that his position as a computer operator would be eliminated, he asked Dick Hanson and Diana Barthelman, the human resources manager, about the availability of other positions within the company. In particular, he expressed interest in an outside sales position. He was considered for the position, but found to be not qualified. There is no evidence in the record of who, if anyone, filled the position.
 
 
 6
 When Mueller asked Hanson what would happen to the other employees in the Data Processing Department as a result of the new computer system, Hanson told him that the programmers were being transferred to the DEC Data Processing Department at the new plant and the key insert operators were being transferred to the user departments at the new plant. Mueller was not offered an opportunity to apply for these positions although he believed that he was qualified.
 
 
 7
 Mueller's employment was terminated on December 31, 1988. He received his full retirement pension and severance pay benefits. Although Mueller's performance appraisals rose and fell during his employment at Greenlee, in the three months prior to his termination, his performance appraisals indicated that he was performing satisfactorily. Mueller conceded that no one from Greenlee management ever made any derogatory or sarcastic comments about his age; however, he does claim that just before his discharge he asked Hanson if a new position had been found for him and he was told that there was nothing for him to do except retire.
 
 II.
 
 8
 This court reviews the district court's grant of summary judgment de novo, considering the facts in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242 (1986). The nonmoving party must produce evidence that creates a triable issue of fact in order to defeat a motion for summary judgment. Id. at 250.
 
 
 9
 When a plaintiff cannot show through direct or circumstantial evidence that age was the determining factor in his discharge, Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1243 (7th Cir.1992), he may use the indirect burden-shifting method of proof for Title VII cases as stated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 371 (7th Cir.1992) (citing Oxman v. WLS-TV, 846 F.2d 448 (7th Cir.1988)). In a RIF case such as this, the plaintiff must first establish a prima facie case by showing that (1) he was in the protected class of persons over the age of forty; (2) he was doing his job well enough to meet the employer's legitimate expectations; (3) he was discharged or demoted; and (4) others outside the protected class were treated more favorably. Oxman, 846 F.2d at 455. The establishment of a prima facie case creates a rebuttable presumption of discrimination. St. Mary's Honor Center v. Hicks, 61 U.S.L.W. 4782, 4783 (U.S. June 25, 1993) (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981)). The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the discharge. Fisher, 979 F.2d at 1243; Colosi v. Electri-Flex Co., 965 F.2d 500, 502 (7th Cir.1992). The defendant bears only the burden of production, and the burden of proof remains with the plaintiff throughout the proceedings. Hicks, 61 U.S.L.W. at 4483 (citing Burdine, 450 U.S. at 253); Anderson v. Stauffer Chemical Co., 965 F.2d 397, 400 (7th Cir.1992). If the employer satisfies its burden, the presumption of discrimination dissolves, and the burden shifts back to the plaintiff to show that the employer's reasons are pretext for discrimination. Fisher, 979 F.2d at 1243; Daugherity v. Traylor Bros., Inc., 970 F.2d 348, 354 (7th Cir.1992) (citing Burdine, 450 U.S. at 253)). To show pretext, the plaintiff must show that it was more likely that the employer was motivated by discriminatory reasons or that the reasons given were not credible. Konowitz v. Schnadig Corp., 965 F.2d 230, 232 (7th Cir.1992) (citing La Montagne v. American Convenience Prods., Inc., 750 F.2d 1405, 1409 (7th Cir.1984)); see Burdine, 450 U.S. at 256.
 
 
 10
 The district court determined that Mueller had "arguably" met his burden of establishing a prima facie case. Greenlee argued that Mueller failed to establish two of the four factors of his prima facie case. Greenlee first contended that Mueller did not meeting Greenlee's legitimate expectations. Although Mueller's performance was less than satisfactory at certain times between 1975 and 1985, he was performing satisfactorily at the time of his discharge. See Anderson, 965 F.2d at 401 ("What matters is whether [the plaintiff] was meeting his employer's expectations at the time of the discharge ") (citing Karazanos v. Navistar Int'l Trans. Corp., 948 F.2d 332, 336 (7th Cir.1991)).
 
 
 11
 Greenlee also challenged the district court's determination that others outside the protected class were favored. According to Greenlee, Boumgarden and Hufstedler should not have been considered "favored" because Greenlee had legitimate reasons for retaining them while discharging Mueller. Greenlee's assertion goes more to the issue of pretext. For purposes of establishing a prima facie case, Mueller showed that younger employees received favorable treatment by retaining employment at Greenlee.[1] Mueller also pointed to other areas of movement within Greenlee that suggested the retention of younger employees. Because all inferences must be taken in favor of the nonmoving party, we will assume the existence of a prima facie case and examine whether the plaintiff succeeded in showing pretext. See, e.g., Daugherity, 970 F.2d at 354; Anderson, 965 F.2d at 401; Konowitz, 965 F.2d at 233.
 
 
 12
 Greenlee articulated several nondiscriminatory reasons for Mueller's discharge. When Greenlee obtained a new computer system, only one computer operator was necessary, and Mueller was not the most qualified. Greenlee explained that it did not find a new position for Mueller because none were available for which he was qualified.
 
 
 13
 In attempting to show pretext, Mueller focused more on Greenlee's inability or refusal to place Mueller in another position in the company rather than the decision to eliminate Mueller's position as a shift computer operator. He conceded that Boumgarden was a more qualified computer operator, and did not assert that Greenlee had a discriminatory motive in selecting Boumgarden as the single operator. Instead Mueller focused on Greenlee's apparent unwillingness to find another position for him in the company. He pointed to Hufstedler's transfer to the traffic department as evidence that Greenlee was helping other employees who presumably knew that their jobs were being eliminated. The record indicates that Hufstedler sought her new position in February 1988, several months before the decision was made to reduce the shift computer operator group to one employee. Although she did receive a merit increase, her new job was actually a demotion to a lower grade salary range. The undisputed facts reveal that Hufstedler received no assistance from management in finding her new position and that no one informed her that her position was going to be eliminated. Mueller did not produced enough evidence concerning Hufstedler's transfer which would suggest that Greenlee acted in a discriminatory manner.
 
 
 14
 Mueller asserted that there were other jobs in the company which he was qualified to fill, but he made little mention of specific jobs. As an ADEA plaintiff, he had to identify those positions which were available for someone with his qualifications, Holmberg v. Baxter HealthCare Corp., 901 F.2d 1387 (7th Cir.1990), and show that he should have obtained a specific job, rather than an employee outside the protected class. Rose v. Wells Fargo & Co., 902 F.2d 1417, 1423 (9th Cir.1990); Komel v. Jewel Companies, 874 F.2d 472, 474 (7th Cir.1989) (in order to show pretext, the plaintiff had to establish that she was as qualified as the candidates who were hired for those positions). Expressing a general interest in obtaining any job within the company is not sufficient to show pretext. See Box v. A & P Tea Co., 772 F.2d 1372, 1377 (7th Cir.1985), cert. denied, 478 U.S. 1010 (1986).
 
 
 15
 Mueller identified only one specific position which he claimed he should have obtained. In the months before his discharge, Mueller expressed an interest in an outside sales position in Greenlee's sales department. Barthelman relayed this information to Jack Angel, the vice president of sales, who determined that Mueller was not qualified. Mueller argued that the dispute over whether he was qualified was enough to create a material issue of fact. An employee's "own self-interested assertions concerning [his] abilities are not in themselves sufficient to raise a genuine issue of material fact." Komel, 874 F.2d at 475 (quoting Williams v. Williams Elec., Inc., 856 F.2d 920, 924-25 (7th Cir.1988)); see Gustovich v. AT & T Communications, Inc., 972 F.2d 845, 848 (7th Cir.1992). While the plaintiff's statements might create a material dispute about the employee's abilities, they "do nothing to create a dispute about the employer's honesty--do nothing, in other words, to establish that the proffered reason is a pretext for discrimination." Gustovich, 972 F.2d at 848 (citing Benzies v. Illinois Department of Mental Health, 810 F.2d 146 (7th Cir.), cert. denied, 107 S.Ct. 3231 (1987)). Mueller did not show that the job was given to a younger individual. Although Barthelman thought that the position was eventually filled by someone from outside the company, Barthelman Dep. at 20, nothing in the record suggests when the alleged hiring occurred or the age of the individual who was hired.
 
 
 16
 Mueller briefly mentioned that he was not considered for the position of manager of manufacturing systems in the MIS department. That job was given to Thomas Runge in July of 1988, months before Mueller was terminated or advised that his job was going to be eliminated. R. 39, Exh. F; Burtner Dep. at 23. Mueller never expressed interest in the position and did not show that he satisfied the requisite qualifications for that position.
 
 
 17
 Although he described his job qualifications in great detail, Mueller failed to identify specific jobs given to younger individuals for which he was qualified. He claimed that lack of information prevented him from identifying open positions. Barthelman advised Mueller to "check the board," but according to Mueller, no job openings were posted at the plant where he worked in the final months of his employment, and he was denied access to the new plant where job openings, if any existed, might have been posted. If Greenlee had deliberately prevented Mueller from learning about potential job opportunities, there might be some indication of discrimination. Cf. International Brotherhood of Teamsters v. United States, 431 U.S. 324, 365 (1977) (no need to actually apply if discriminating practices are so successful that the plaintiff was completely deterred). But Mueller did not present any evidence to the court that there were actual job opportunities matching Mueller's qualifications. Such information, if it existed, should have been available to Mueller when he conducted discovery.
 
 
 18
 Mueller listed other types of jobs for which he claims he was never considered: "union jobs", "computer positions", and positions for "other salaried employees" which were filled by Greenlee sometime after Mueller's discharge. Appellant's Brief at 16. However, Mueller did not identify specific available positions and show that he satisfied the requisite qualifications. The record indicates that many of those jobs were filled during the years following Mueller's discharge. Subsequent job openings which surface several months after the plaintiff's discharge should not be considered as satisfactory proof of open positions at the time of the discharge. Earley v. Champion Intern. Corp., 907 F.2d 1077, 1083 (11th Cir.1990).
 
 
 19
 Mueller claimed that he "observed numerous younger, less senior employees being gradually transferred to the new plant," R. 42, at 20; Appellant's Br. at 5, but the undisputed facts reveal that these were most likely the programmers who were transferred to DEC and key insert operators who were transferred and placed in user departments because of the new computer system. He also referred to those in the Honeywell department who were placed in the DEC Computer Department. A plaintiff whose discharge occurs "amidst a corporate reorganization carries a greater burden of supporting charges of discrimination," Aungst v. Westinghouse Elec. Corp., 937 F.2d 1216, 1221 (7th Cir.1991) (quoting Ridenour v. Lawson Co., 791 F.2d 52, 57 (6th Cir.1986)), and must produce "additional direct, circumstantial, or statistical evidence that age was a factor in his termination." Id. (citations omitted). Aside from Mueller's failure to produce concrete evidence, in any form, of younger employees filling those positions, he made no showing that he was excluded from consideration due to his age. Mueller asserted that he had the experience and ability to perform those jobs, but he was not even aware of the requisite qualifications of many of those positions. Nothing in the record indicates that the transfer of entire departments to other locations was anything more than a legitimate business decision. The court is not a "superpersonnel department that reexamines an entity's business decisions." Komel, 874 F.2d at 474 (citing Dale v. Chicago Tribune, 797 F.2d 458, 464 (7th Cir.1986), cert. denied, 479 U.S. 1066 (1987)).
 
 
 20
 At the center of Mueller's claim is his belief that Greenlee should have made more aggressive attempts to find something for him to do within the company because of his seniority at Greenlee. The ADEA is not a guarantee of tenure for older workers. Shager, 913 F.2d 398, 101 (7th Cir.1990). Mueller had to do more than show that Greenlee acted unfairly by discharging him; "the evidence must support the conclusion that [Greenlee] 'made up' its reason for the discharge." Castelman v. Acme Boot Co., 959 F.2d 1417, 1422 (7th Cir.1992). It is not unlikely that Greenlee ignored his requests for assistance in securing a position because he was at the age of retirement; unfortunately, Mueller failed to produce evidence that Greenlee's decision to terminate him and not allow him to transfer to another open position more likely than not was motivated by discriminatory reasons or that its proffered explanations were unworthy of credence. Oxman, 846 F.2d at 456 (citing La Montagne, 750 F.2d at 1409).
 
 
 21
 AFFIRMED.
 
 
 
 *
 John Mueller erroneously sued the defendant as Greenlee Tool Company. The correct name is Greenlee Textron Inc
 
 
 [1]
 Both Boumgarden and Hufstedler were 41 years of age at the time Mueller was discharged. While they are themselves within the protected class, they may be considered "younger employees" for purposes of determining whether they received preferential treatment. See La Montagne, 750 F.2d at 1411 n. 4