**James KASTER, Plaintiff,**

**v.**

**SAFECO INSURANCE COMPANY OF AMERICA, Defendant.**

**Case No. 01–2190–JWL.**

United States District Court, D. Kansas.

Aug. 7, 2002.

Sarah A. Brown, Parkinson, Foth, Orrick & Brown, LLP, Lenexa, KS, for Plaintiff.

Jennifer P. Kyner, Armstrong Teasdale LLP, Kansas City, MO, for Defendant.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

Plaintiff filed suit against defendant, his former employer, alleging that defendant, on the basis of plaintiff's age and in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., failed to promote or otherwise transfer plaintiff to an open position within the company after defendant acquired plaintiff's previous employer and ultimately terminated plaintiff's employment. This matter is presently before the court on defendant's motion for summary judgment (doc. # 42); plaintiff's motion to strike portion of defendant's reply brief (doc. # 56); and defendant's motion to strike plaintiff's surreply (doc. # 58). As set forth in more detail below, defendant's motion for summary judgment is granted and plaintiff's complaint is dismissed in its entirety. Both motions to strike are denied.[1]

## I. Facts

The following facts are uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Plaintiff was born on September 4, 1946. In 1976, he went to work for American States Insurance Company (ASI). In the summer of 1997, ASI employees were notified that defendant Safeco Insurance Company was going to acquire ASI. At the time of the acquisition, plaintiff was a Personal Insurance Manager operating out of ASI's Fort Scott, Kansas office and he reported to John Meylor, one of ASI's Regional Underwriting Managers.

Defendant's primary reason for acquiring ASI was to acquire ASI's commercial

---

1. In his motion to strike, plaintiff asserts that defendant advanced a new argument for the first time in its reply brief. The motion is denied on this issue as defendant's argument concerning whether plaintiff established a prima facie case on his discriminatory discharge claim was raised in its initial briefing. In any event, the court notes that, because it has assumed for purposes of its analysis of defendant's motion that plaintiff has established a prima facie case of discrimination with respect to his discharge claim, it has not considered in any respect the specific argument reiterated by defendant in its reply brief. The only other basis for plaintiff's motion is plaintiff's assertion that defendant, in its reply, "impermissibly commented on Plaintiff's response to the material facts" set forth by defendant in its initial brief. Plaintiff directs the court to no authority suggesting that the moving party is not permitted to "reply" to the non-moving party's response to the statement of uncontroverted facts. The motion is therefore denied on this issue.

Defendant's motion to strike is also denied. In its motion, defendant contends that plaintiff's surreply violates this court's order of July 5, 2002 in which the court directed plaintiff to file a surreply limited to effect of the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, —— U.S. ——, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). To be sure, plaintiff's surreply exceeds the court's order and addresses issues wholly unrelated to Morgan. Nonetheless, given the court's ultimate conclusion that summary judgment in favor of defendant is appropriate, the court considered the substance of plaintiff's surreply to ensure that plaintiff had every opportunity to present evidence relevant to his claims.

underwriting expertise. By contrast, ASI's results in personal lines were poor and defendant's goal upon acquiring ASI's personal lines book of business was to "move and fix" the business. In fact, at the time of the acquisition, defendant planned to adopt its own business model for operating personal lines rather than that of ASI. In any event, defendant's acquisition of ASI was completed in October 1997. Prior to the acquisition, defendant had five regions (California; Atlanta; Denver; St. Louis; and Seattle) with a number of branch offices reporting to those regions. At the time of the acquisition, a decision was made to restructure personal lines so that there would be thirteen regions. Thus, in October 1997, defendant selected individuals for thirteen regional Personal Business Manager (PBM) positions. Plaintiff was not selected for any of the positions. While it is unclear from the record how defendant knew at this time that plaintiff was interested in the PBM positions, it is uncontroverted that defendant was generally aware that plaintiff was interested in any and all of the thirteen PBM positions.

In January 1998, defendant's Transition Vice President, Pat Kari, visited the Fort Scott, Kansas office in order to get acquainted with the executives in Fort Scott. When plaintiff met with Ms. Kari in January 1998, he told her that he enjoyed what he was doing, but that if the organization needed him to do something else, he would be willing to look at jobs in other areas of the company. Plaintiff also expressed to Ms. Kari his concern that he had not received a promotion to any of the PBM positions. According to plaintiff, Ms. Kari responded that "it was too early" and that plaintiff should "focus" on managing the Fort Scott office.

In July 1998, defendant announced that it had decided to close the Fort Scott office for a variety of business reasons. In fact,

plaintiff does not dispute that the decision to close the office was motivated by legitimate business considerations. At some point thereafter, defendant notified all of the employees in the Fort Scott office that their last day of employment would be June 30, 1999. During this time period, plaintiff continued to advise various members of defendant's management team that he was hoping to find another position within the organization and that he was willing to relocate and even take a lower paying position if necessary to continue his employment with defendant.

After the initial regional PBM selection decisions were made in October 1997, three other regional PBM positions became available in July 1998; January 1999; and March 1999, respectively. In July 1998, a regional PBM position became available in the Seattle region and was ultimately filled by Kelly Corno. In January 1999, a regional PBM position became available in the Porland region. Barb Steeves was selected for the position. In March 1999, a regional PBM position became available in the Chicago region and the position was ultimately filled by an individual named William Gatewood. Again, despite expressing an interest in each of these positions, plaintiff was not selected for any of the positions. In March 1999, plaintiff interviewed for an administrative services position in Indianapolis. Ultimately, the decisionmaker with respect to the position, Tom Cox, selected another individual for the position.

In June 1999, plaintiff had his last day of employment in the Fort Scott office. Having failed to obtain any other position in the organization, plaintiff's employment was terminated. Thereafter, plaintiff filed suit against defendant alleging that defendant failed to promote and/or transfer plaintiff to another position based on plaintiff's age. It is undisputed that no one

within defendant's organization ever referred to plaintiff's age in any way or made any reference to his or other employees' ages.

## II.  Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir.2002).  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir.2001) (*citing Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998)).  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler*, 144 F.3d at 670 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Spaulding*, 279 F.3d at 904 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.  *Adams v. American Guarantee & Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir.2000) (*citing Adler*, 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279 F.3d at 904 (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.  *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir.2001).  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1197–98 (10th Cir.2000) (*quoting Adler*, 144 F.3d at 671).  To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibits incorporated therein." *Adams*, 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (*quoting* Fed.R.Civ.P. 1).

## III.  Discussion

In the pretrial order, plaintiff contends that defendant, based on plaintiff's age, failed to promote or transfer plaintiff to an available position within defendant's organization.  Specifically, plaintiff challenges as discriminatory the thirteen Regional Personal Business Manager (PBM) selection decisions made in October 1997; the Regional PBM selection decision made in July 1998 for the Seattle region when Kelly Corno was the successful candidate; the

Regional PBM selection decision made in January 1999 for the Portland region when Barb Steeves was the successful candidate; the Regional PBM selection decision made in March 1999 for the Chicago region when William Gatewood was the successful candidate; and the selection decision made in March 1999 for the administrative services manager position in Indianapolis when Carol Willman was the successful candidate.

Plaintiff also claims that defendant, on the basis of plaintiff's age, refused to place him in "any available position." Aside from the specific selection decisions identified above, however, plaintiff has not identified a specific position that he was allegedly denied. Stated another way, plaintiff does not point to any particular position that he contends he should have or would have received absent defendant's alleged discrimination. In a similar vein, plaintiff apparently challenges defendant's failure to transfer him to any available Territory Manager position, which actually would have been a demotion for plaintiff. Plaintiff, however, fails to identify any specific Territory Manager position that he claims he should have received.

Finally, plaintiff contends that defendant, on the basis of plaintiff's age, terminated plaintiff's employment.

As explained more fully below, summary judgment is warranted on plaintiff's claims as plaintiff has failed to show the existence of any genuine factual issue requiring a trial.

● *Promotion and Selection Decisions Prior to November 1998*

In its motion for summary judgment, defendant contends that plaintiff's claims with respect to the promotion and selec-

tion decisions occurring prior to November 1998 (i.e., 300 days prior to the time plaintiff filed his EEOC charge) are time-barred. Under the ADEA, like Title VII, a plaintiff must file an administrative charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred." See *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1310 (10th Cir.1999); 29 U.S.C. § 626(d)(2).[2] A claim is time barred if it is not filed within these time limits. See *Bullington*, 186 F.3d at 1310. In this case, defendant made the vast majority of the promotion and selection decisions at issue in October 1997. In order for a claim based on this conduct to be timely, then, plaintiff was required to file an EEOC charge within 300 days after the October 1997 promotion decisions. However, plaintiff waited almost two years, until August 31, 1999, to file his charge.

■ Plaintiff attempts to avoid this apparent untimeliness by invoking the continuing violation doctrine. The application of that doctrine in the failure-to-promote context, however, was expressly rejected the Supreme Court in *National Railroad Passenger Corp. v. Morgan*, —— U.S. ——, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). According to the Supreme Court in Morgan, a plaintiff cannot recover "for discrete acts of discrimination or retaliation that occur outside the statutory time period." *Id.* at 2068. Specifically, the court held:

A discrete retaliatory or discriminatory act "occurred" on the day that it "happened." A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it.

---

**2.** The 300–day time period is utilized in "deferral states," like Kansas, in which the EEOC defers to the enforcement efforts of a state agency empowered to undertake employment discrimination investigations; in all other states, the charge must be filed within 180 days. *See Bullington*, 186 F.3d at 1310 n. 2.

*Id.* at 2070–71. The Court further emphasized that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 2072.[3] Under Morgan, then, it is clear that the October 1997 promotion decisions (and any other promotion or selection decision occurring prior to November 1998) are discrete acts and are time-barred. *See id.* at 2073 (identifying "failure to promote" as a discrete act that is "easy to identify"); *see also Jarmon v. Powell*, 208 F.Supp.2d 21, 28–30 (D.D.C.2002) (Supreme Court's decision in Morgan was "fatal" to plaintiff's continuing violation theory asserted in failure-to-promote context).[4]

■ Plaintiff next tries to salvage these claims by arguing that the statutory limitations period was subject to equitable tolling. Under proper circumstances, the timely filing of a discrimination charge may be equitably tolled. *See Morgan,* —— U.S. at ——, 122 S.Ct. at 2072 (time period for filing a charge is subject to equitable doctrines such as tolling or estoppel). As the Supreme Court in Morgan cautioned, however, equitable doctrines "are to be applied sparingly." *Seeid.* Moreover, according to Tenth Circuit precedent, equitable tolling of the ADEA time limits is appropriate "only where the circumstances of the case rise to the level of active deception where a plaintiff has been lulled into inaction by her past employer, state or federal agencies, or the courts." *Bennett v. Quark, Inc.,* 258 F.3d 1220, 1226 (10th Cir.2001) (*quoting Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir.1994)). When such deception is alleged on the part of the plaintiff's employer, the limitations period "will not be tolled unless an employee's failure to timely file results from either a deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing [her] charge." *Id.* (*quoting Hulsey,* 43 F.3d at 557). Finally, the decision whether to equitably toll the limitations period rests within the sound discretion of the district court. *Id. (citations omitted).*

■ In support of his assertion that the limitations period was equitably tolled, plaintiff highlights that when he expressed

---

3. The Court in Morgan noted that the statute does not bar an employee from using time-barred acts as background evidence in support of a timely claim. *Morgan,* —— U.S. at ——, 122 S.Ct. at 2072. Because the court grants summary judgment on the merits of plaintiff's timely ADEA claims, however, this aspect of the Morgan decision is of no avail to plaintiff.

4. Plaintiff maintains that the Supreme Court's decision in Morgan is not applicable to this case because the Court stated that it was not considering "the timely filing question with respect to 'pattern-or-practice' claims brought by private litigants," *Morgan,* —— U.S. at —— n. 9, 122 S.Ct. at 2073 n. 9, and that plaintiff here is claiming that defendant "engaged in a continuous pattern of discriminatory practices against him on the basis of his age." Plaintiff's reliance on this footnote in Morgan is misplaced. Plaintiff's bald assertions that defendant engaged in a pattern and practice of discrimination against him individually is a wholly distinct theory from "pattern-or-practice" cases brought by a class of persons alleging general discriminatory treatment toward all members of that protected class. A "pattern-or-practice" case, unlike plaintiff's individual disparate treatment claim here, requires proof of more "than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." *See International Bhd. of Teamsters v. United States,* 431 U.S. 324, 336, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Rather, plaintiffs alleging a pattern-or-practice of discrimination must "establish by a preponderance of the evidence that ... discrimination was the company's standard operating procedure-the regular rather than the unusual practice." *Id.* In short, plaintiff's theory of recovery here is separate and distinct from a "pattern-or-practice" case as that phrase is used by the Supreme Court in Morgan.

concern to Pat Kari in January 1998 about not being selected for various management positions, she told him that "it was too early."[5] He further asserts that defendant led him to believe that he would have a position with the company if he was willing to relocate and take a demotion. Specifically, plaintiff asserts that defendant's agents, early in the merger process, assured all employees, including plaintiff, that anyone with a record of good performance who was willing to relocate and accept "possible job changes" would find a position in the organization. Plaintiff, however, has failed to present competent Rule 56(e) evidence supporting this assertion; the purported statement appears in a unsworn letter from plaintiff to defendant. *See Hayes v. Marriott,* 70 F.3d 1144, 1148 (10th Cir.1995) (unsworn statements do not raise factual issues precluding summary judgment). Moreover, defendant highlighted this evidentiary problem in its reply brief and further challenged the statement as inadmissible hearsay. Plaintiff filed a surreply in which he addressed the hearsay challenge to the statement but wholly ignored the more fundamental problem with the statement—the fact that it was unsworn. Thus, even when presented with an opportunity to fix the problem, he declined to do so.

In any event, even assuming plaintiff's evidence concerning defendant's assurances that good employees would be retained in the new organization was admissible, the court would nonetheless deem such evidence insufficient to justify tolling the limitations period. For evidence of defendant's assurances, coupled with Ms. Kari's statement that it was "too early,"

demonstrates only that defendant provided plaintiff with false hopes that he would obtain another position and, in plaintiff's words, "strung him along" until his ultimate termination. Significantly, there is no evidence that such statements or assurances were intended to delay plaintiff's filing a discrimination charge (in fact, it appears that defendant's purported assurances that everyone would find a job in the new organization were made well before plaintiff even had a reason to contemplate filing a charge) and plaintiff does not suggest that defendant, by its statements, intended to delay plaintiff or that defendant should have realized that its statements or assurances would have the effect of causing plaintiff to delay filing a charge. *See Bennett v. Quark, Inc.,* 258 F.3d 1220, 1226 (10th Cir.2001) (the limitations period "will not be tolled unless an employee's failure to timely file results from either a deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing [her] charge") *(quoting Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir.1994)). Moreover, this court has previously held that evidence like that presented by plaintiff here is insufficient to toll the limitations period, *see Tilmon v. Dillard's Dep't Stores,* 58 F.Supp.2d 1276, 1283 (D.Kan. 1999) (in failure-to-promote context, refusing to excuse plaintiff's failure to file a timely charge of discrimination despite plaintiff's allegation that she was led to believe by her employer that she would be given consideration for promotions as positions became available), and the Tenth

---

**5.** In his papers, plaintiff characterizes Ms. Kari's statement as "it was too early to be concerned." Plaintiff testified in his deposition, however, that when he expressed concern about not being promoted, Ms. Kari stated only that "it was too early" and that he should focus on managing the Fort Scott of-

fice. See Plaintiff's Depo. at page 191, lines 12–14. Ms. Kari's statement, then, is ambiguous at best. She may have meant that it was "too early" after the acquisition for plaintiff to receive a promotion, not necessarily that it was "too early" for plaintiff to be concerned.

Circuit has rejected an analogous argument. *See Mascheroni v. Board of Regents of University of California,* 28 F.3d 1554, 1562–63 (10th Cir.1994) ("Comments by [defendant's managers] may have given [plaintiff] false hope that his problems could be resolved internally, but they do not rise to the level of active deception about the procedures for filing a Title VII claim.").

In short, then, plaintiff has failed to alleged sufficient facts to justify tolling the 300–day limitations period, particularly in the light of the Supreme Court's admonition in Morgan that equitable doctrines should be used "sparingly." Simply put, there is no evidence that defendant intended to delay plaintiff's filing of an EEOC charge or otherwise engaged in any conduct that defendant "should unmistakably have understood" would cause plaintiff to delay filing a charge. *See Bennett,* 258 F.3d at 1226. In the absence of such evidence, the court will not toll the limitations period. *Compare Bennett v. Coors Brewing Co.,* 189 F.3d 1221, 1235–36 (10th Cir.1999) (plaintiffs alleged acts that "could persuade a court to activate the doctrine of equitable tolling" where genuine issues of material fact existed concerning whether defendant made fraudulent misrepresentations concerning alleged reduction-in-force, leaving plaintiffs "unaware" of the facts necessary to support claim).

● *Promotion and Selection Decisions After November 1998*

Having determined that only those claims arising after November 1998 are properly before the court, the court turns to address the merits of those claims. As the Tenth Circuit recently reiterated, plaintiff can prove that defendant discriminated against him on the basis of age by providing either direct or circumstantial evidence of discrimination. *See Danville v. Regional Lab Corp.,* 292 F.3d 1246, 1249 (10th Cir.2002) (*citing Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir. 2000)). Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons. *Id.* (*citing Ramsey v. City & County of Denver,* 907 F.2d 1004, 1008 (10th Cir.1990)). Circumstantial evidence allows the jury to draw a reasonable inference that discrimination occurred. *Id. (citing Stone,* 210 F.3d at 1136). There is no evidence in this case that might constitute direct evidence of age discrimination and plaintiff does not contend otherwise. Thus, the court evaluates plaintiff's claims using the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See id.*

● *Plaintiff's Prima Facie Case*

Under the McDonnell Douglas framework, plaintiff must first establish a prima facie case of discrimination. *See id.* With respect to the three specific post-November 1998 selection decisions challenged by plaintiff, the court assumes, without deciding, that plaintiff has established a prima facie case. With respect to plaintiff's claims that defendant refused to place him in "any available position" and that defendant failed to transfer him to a Territory Manager position, the court concludes that plaintiff cannot establish a prima facie case. For this reason, summary judgment is granted in defendant's favor with respect to plaintiff's claims concerning the unidentified "available" positions and the Territory Manager positions.

■ According to defendant, plaintiff cannot establish a prima facie case of discrimination with respect to his claim that defendant refused to place him in "any available position" because plaintiff has not identified any specific position (other than the ones discussed below) that he should have or would have received absent defendant's alleged discrimination. Indeed, ev-

ery Circuit that has addressed this issue has required a plaintiff, as part of that plaintiff's prima facie case, to come forward with evidence of a specific vacant position for which the plaintiff was qualified and on which the plaintiff's claim is based. *See, e.g., Brown v. Coach Stores, Inc.,* 163 F.3d 706, 711–12 (2nd Cir.1998) (affirming 12(b)(6) dismissal of plaintiff's failure-to-promote claim in part because plaintiff failed to allege the specific positions to which she would have applied had the alleged discriminatory practices not existed); *Weber v. American Express Co.,* 994 F.2d 513, 516 (8th Cir.1993) (affirming grant of summary judgment to defendant on plaintiff's failure-to-hire claim where plaintiff failed to generate a factual dispute on an "essential element" of his prima facie case—the availability of a position for which he was qualified); *Rush v. Mc-Donald's Corp.,* 966 F.2d 1104, 1118 (7th Cir.1992) (affirming grant of summary judgment to defendant on plaintiff's failure-to-promote claim in part because plaintiff failed to show the existence of an available position); *Chavez v. Tempe Union High Sch. Dist. No. 213,* 565 F.2d 1087, 1091–92 (9th Cir.1977) (concluding that plaintiff failed to prove the existence of a job opening and thus failed to establish a prima facie case of discrimination in failure-to-promote context).[6]

The rationale underlying these cases is clear–without any evidence whatsoever of specific positions, the jury would be left to speculate whether defendant even had open, available positions during the relevant time period for which plaintiff would have been qualified. Thus, at this stage in the litigation, it is simply not sufficient for plaintiff merely to assert that he was gen-erally denied "available positions" on the basis of his age. *See Jones v. Unisys Corp.,* 54 F.3d 624, 631 (10th Cir.1995) (affirming summary judgment for employer; plaintiff failed to establish prima facie case of discrimination because he "did not identify specific jobs to which he claims he should have been transferred nor present evidence he was qualified for such jobs"); *accord Mueller v. Greenlee Textron Inc.,* 1993 WL 312891, at *4, 2 F.3d 1153 (7th Cir.1993) (affirming summary judgment for employer where plaintiff failed to present any evidence that there were actual job opportunities matching his qualifications; such information, if it existed, should have been available to plaintiff when he conducted discovery); *Madiedo v. Miami–Dade County,* No. 99–1422–CIV, 2000 WL 1763845, at *7 (S.D.Fla. June 1, 2000) (granting summary judgment for employer where plaintiff failed to identify any specific assignment she desired but did not receive; "[t]he bare allegation that [plaintiff] did not receive assignments she desired is insufficient to raise a material issue of fact as to whether the County discriminated against her"). Based on all of the authorities set forth above, and in the absence of any persuasive argument from plaintiff, it is clear that plaintiff cannot establish a prima facie case of discrimination based on the theory that defendant generally refused to place plaintiff in "any available position."

The court also agrees with defendant that plaintiff cannot establish a prima facie case with respect to his claim that he should have been placed in a Territory Manager position. In his papers, plaintiff concedes that the Territory Manager posi-

---

**6.** Similarly, the Tenth Circuit, albeit in an unpublished opinion, has required a plaintiff to identify a specific vacant position for which that plaintiff was qualified and on which his or her claim is based. *See Jackson v. Boeing Co.,* 1992 WL 372383, at *1, 982 F.2d 528 (10th Cir.1992) (affirming grant of summary judgment to defendant on plaintiff's section 1981 failure-to-rehire claim in part because plaintiff failed to designate any evidence showing that a position was available).

tions filled during the relevant time period (i.e., the 300–day window prior to the time plaintiff filed his charge of discrimination) were filled by persons insignificantly younger than plaintiff.[7] Thus, plaintiff cannot establish a prima facie case with respect to these positions and summary judgment is appropriate to the extent plaintiff challenges the selection decisions for the Territory Manager positions. *See Munoz v. St. Mary–Corwin Hosp.*, 221 F.3d 1160 (10th Cir.2000) (plaintiff failed to establish prima facie case of age discrimination where there was an "insignificant difference" between plaintiff's age and the age of his replacement) (*citing O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996)).

● *Defendant's Proffered Reasons for its Selection Decisions*

■ With respect to the two remaining PBM positions at issue, the primary decisionmaker was Bill Thomas, defendant's Senior Vice President for Personal Lines.[8] According to Mr. Thomas, William Gatewood was selected for the PBM position in Chicago for a variety of reasons, including the fact that Mr. Gatewood had worked in the now-defunct St. Louis region-a region that worked closely with the Chicago region-and, thus, was familiar with the Chicago region and had worked with the former Chicago Regional Manager. In other words, Mr. Gatewood was familiar with the Chicago region. Mr. Thomas further testified that economics came into play to a certain extent-Mr. Gatewood, living in St.

Louis, could easily move and transfer to the Chicago area. Finally, Mr. Thomas testified that Mr. Gatewood had "been on inventory" for a PBM role for a couple of years because he had "grown up" under a "very fine personal lines manager who had a lot of success in growing his people." According to Mr. Thomas, defendant had a number of individuals working under this personal lines manager who ultimately succeeded to the PBM role. Mr. Thomas testified that Barb Steeves was chosen for the PBM position in Portland because she had both home and field office experience; she had started with defendant in its home office as a staff underwriter and had performed well in that role; she had come out of and had strong relationships within the northwest area; and she had good interpersonal skills.[9]

With respect to the administrative services manager position in Indianapolis, the primary decisionmaker was Tom Cox, an employee of ASI and its predecessors for nearly 26 years.[10] Plaintiff interviewed with Mr. Cox for the position in March 1999. Ultimately, Mr. Cox filled the position with a Safeco employee, Carol Willman. Mr. Cox testified that he believed that Ms. Willman was the better qualified candidate for the administrative position because she had prior experience with some of the functions of the services department; she came highly recommended and already had successful working relationships with key home office people with whom she would interact in the new position; he had previously worked with her

---

7. In fact, the record reflects that only one Territory Manager position was filled between November 1998 and plaintiff's discharge in August 1999. That position was filled by an individual just eight months younger than plaintiff.

8. Mr. Thomas is older than plaintiff.

9. By contrast, Mr. Thomas believed that the results that plaintiff had produced out of the

Fort Scott office "were not very good" and that the quality of the book of business there "was not particularly good." Mr. Thomas believed that plaintiff could benefit from "learn[ing] his way around [defendant's] process."

10. Mr. Cox is older than plaintiff.

on a project and was impressed with her contribution; and she was a local candidate. By contrast, Mr. Cox did not know plaintiff before his March 1999 interview.

In sum, defendant has satisfied its "exceedingly light" burden to provide nondiscriminatory reasons for its actions. *See Anaeme v. Diagnostek, Inc.,* 164 F.3d 1275, 1279 (10th Cir.1999).

- *Pretext*

■ As defendant has asserted facially nondiscriminatory reasons for its selection decisions, plaintiff may resist summary judgment only by presenting evidence that defendant's reasons are pretextual (i.e., unworthy of belief) or by otherwise introducing evidence of a discriminatory motive. *See Danville v. Regional Lab Corp.,* 292 F.3d 1246, 1250 (10th Cir.2002) (*citing Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1137 (10th Cir.2000)). Pretext "can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id. (quoting Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997)). When assessing whether plaintiff has made an appropriate showing of pretext, the court considers the evidence as a whole. *Id. (citation omitted).* As set forth below, plaintiff has failed to come forward with evidence from which a reasonable jury could conclude that defendant's proffered reasons for its selection decisions are pretextual. Summary judgment, then, is warranted on these claims.

In an effort to show that defendant's proffered reasons are pretextual, plaintiff first challenges the specific reasons set forth with respect to the selections of Mr. Gatewood, Ms. Steeves and Ms. Willman. With respect to the positions filled by Mr.

Gatewood and Ms. Steeves, plaintiff urges that he was more qualified than both of those individuals. Plaintiff states, for example, that he had a higher supervisory management position than Mr. Gatewood in March 1999; that he had significantly more management experience than Mr. Gatewood; and that he had more underwriting experience than Mr. Gatewood. Similarly, plaintiff contends that Ms. Steeves was in a non-supervisory position at the time she was selected for the PBM position; that he had more management experience than Ms. Steeves; and that he had more experience in personal lines than Ms. Steeves. Such evidence, however, is insufficient to create a jury issue for two reasons.

First, as the Tenth Circuit has repeatedly emphasized, a plaintiff's own opinions about his qualifications do not give rise to a material factual dispute. *See Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1317–18 (10th Cir.1999); *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1329 (10th Cir.1999). Moreover, even if Mr. Thomas misjudged the qualifications of Mr. Gatewood and/or Ms. Steeves, such evidence would not preclude summary judgment on this claim. The relevant inquiry is not whether defendant's reasons for its selection decisions were "wise, fair or correct," but whether defendant and, more specifically, Mr. Thomas "honestly believed those reasons and acted in good faith upon those beliefs." *See Bullington,* 186 F.3d at 1318 *(citations omitted).* Plaintiff presents no evidence indicating that Mr. Thomas did not genuinely believe that Mr. Gatewood and Ms. Steeves were the most qualified candidates for the positions at issue. In fact, plaintiff concedes that Mr. Thomas "subjectively believed" that these individuals were the best qualified candidates. See Plaintiff's Response to Statement of Facts 109.

Second, defendant has not suggested that Mr. Gatewood or Ms. Steeves were selected for their superior management, supervisory, underwriting or personal lines experience. Mr. Gatewood, for example, was selected because he was familiar with the Chicago region, had worked closely with individuals in that region, was a local candidate, and was well trained by a "fine personal lines manager." Ms. Steeves was selected because she had experience in both the home and field offices, had good interpersonal skills,[11] and had strong ties to the area. These reasons are unrelated to general supervisory or management experience or particular experience in underwriting or personal lines. Thus, even assuming plaintiff is correct that he was more qualified in terms of supervisory, management, underwriting or personal lines experience, such evidence does not demonstrate that defendant's proffered reasons for selecting Mr. Gatewood and Ms. Steeves are unworthy of belief.

In a related argument, plaintiff contends that defendant's "refusal" to consider plaintiff's good past performance evaluations is evidence of "invidious discrimination." Even assuming there was evidence in the record that defendant "refused" to consider plaintiff's good performance, such evidence would be irrelevant to the pretext analysis as defendant does not contend that plaintiff's lack of "good performance"

kept him from obtaining any of the three specific jobs at issue. Similarly, plaintiff suggests that defendant's failure to consult with plaintiff's supervisor at ASI, John Meylor, is evidence of pretext. The ADEA, however, does not require employers to visit with an applicant's former supervisors or employers prior to making its employment decision-it simply precludes employers from making that employment decision based on the applicant's age. Moreover, there is no evidence in the record or suggestion from plaintiff that defendant consulted with former supervisors of other applicants but not plaintiff. In other words, there is no evidence that defendant treated plaintiff differently than anyone else in that respect. Thus, even if defendant's investigation into plaintiff's qualifications was something short of thorough, this evidence, standing alone, does not permit an inference that plaintiff's age was a determining factor in defendant's hiring decisions. Such evidence "goes only to process and not to purpose or motivation, and could not provide a sufficient basis for a jury to find pretext for age discrimination." *Ingels v. Thiokol Corp.*, 42 F.3d 616, 623 (10th Cir.1994); *accord Jacobs v. Delta Air Lines, Inc.*, 156 F.3d 1243, 1998 WL 514620, at *3 (10th Cir.1998) (even assuming Delta failed to investigate thoroughly the harassment allegations against plaintiff, "this complaint challenges the

---

**11.** Plaintiff also challenges defendant's use of subjective factors like "good interpersonal skills" in making its selection decisions. As an initial matter, the Tenth Circuit has aptly recognized that subjective factors often play a legitimate role in the hiring process and, thus, the use of such factors does not per se constitute discrimination. See *Pitre v. Western Elec. Co.*, 843 F.2d 1262, 1272 (10th Cir.1988); *accord Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 987 (10th Cir.1996) (use of subjective criteria does not suffice to prove intentional age discrimination). Rather, "the use of ... subjective criteria ... can create a strong inference of discrimination if there is a show-

ing of significant disparity in the representation of a particular group." *See Mohammed v. Callaway*, 698 F.2d 395, 401 (10th Cir. 1983). In the present case, there has been no showing of such significant disparity of representation. Moreover, the court notes that plaintiff has not shown or even argued that the characteristic of "good interpersonal skills" somehow is stereotypical or otherwise indicative of age discrimination. Stated another way, the phrase "good interpersonal skills" does not appear to be a "code" phrase for younger employees, unlike the words "energetic" or "vigor" might be in the appropriate context.

process applied rather than Delta's purpose or motivation" and, thus, cannot support an inference of pretext).

With respect to the selection of Carol Willman for the administrative services position in Indianapolis, plaintiff first suggests that Mr. Cox's reliance on his own personal acquaintance with Ms. Willman and his personal knowledge of Ms. Willman's good past performance is somehow suspect. As this court has previously held, however, favoritism based on personal acquaintance or a good working relationship does not violate the federal anti-discrimination laws and does not raise an inference of discrimination. *See Housley v. Boeing Co.,* 177 F.Supp.2d 1209, 1217 (D.Kan. 2001) *(citing Paulsboe v. Farnam Cos., Inc.,* 1997 WL 431414, at \*2, 120 F.3d 271 (10th Cir.1997) *(citing Brandt v. Shop 'n Save Warehouse Foods, Inc.,* 108 F.3d 935, 938–39 (8th Cir.1997) (holding that although job may have been created and person hired based on friendship, rather than qualifications, this did not raise inference that decision was motivated by gender discrimination)); *Autry v. North Carolina Dep't of Human Resources,* 820 F.2d 1384, 1385 (4th Cir.1987) (holding race discrimination case not made by showing that friendship or politics may have entered into promotion decision)).

Plaintiff also contends that he had more management experience and supervised more employees than Ms. Willman did. For the same reasons set forth above in connection with the discussion of Mr. Gatewood and Ms. Steeves, evidence as to plaintiff's management and supervisory experience is wholly inadequate to demonstrate pretext in this context. As to defendant's showing that one of the reasons it selected Ms. Willman was based on her prior successful working relationships with key home office people with whom she would interact in the new position, plaintiff urges that he, too, had "relationships with individuals" in Indianapolis. This assertion, however, is unsupported by any evidence in the record and, in any event, does not speak to whether plaintiff had working relationships with individuals in defendant's home office. Finally, plaintiff contends that defendant's reliance on the fact that Ms. Willman was a local candidate "contradicts [defendant's] company-wide pronunciation that anyone willing to relocate would have a job at Safeco," and that he was willing to relocate for the position. As the court previously explained, however, plaintiff's evidence of defendant's assurances or promises that all employees would find a job with defendant is inadmissible because the purported statement is contained in an unsworn document. *See supra* page 11. Moreover, even assuming plaintiff had presented the statement in a form that satisfied the evidentiary requirements of Rule 56(e), the statement itself is hearsay as plaintiff is clearly offering the statement-"[E]arly promises ... were made by company executives when they announced that their employee needs exceeded the employment pool of both companies and that anyone with good performance records, willing to move and willing to accept possible job changes would find a position in the new corporation"-to prove the truth of that statement. Plaintiff suggests that this statement is not hearsay because it is a vicarious admission under Federal Rule of Evidence 801(d)(2)(D). Under that rule, a statement is not hearsay if it is offered against a party and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." See Fed.R.Evid. 801(d)(2)(D) (emphasis added). However, the statement offered by plaintiff is so vague that it provides no insight whatsoever as to who made the statement; whether the statement was made within the scope of the speaker's

agency or employment; whether the speaker had reason to know that defendant had more jobs than employees to fill those jobs; or whether the statement was made in the course of the speaker carrying out duties assigned to him or her by defendant. *Cf. Hybert v. Hearst Corp.*, 900 F.2d 1050, 1053 n. 6 (7th Cir.1990) (supervisor's statements to the effect that "people in upper management were bent on replacing older salesmen with younger salesmen admissible under 801(d)(2)(D) where statements were made in the course of supervisor carrying out duties regarding plaintiff's retention-duties which were assigned to him by management"); *accord EEOC v. Learonal, Inc.*, No. 93–C–2950, 1994 WL 530711, at *2–3 (N.D.Ill.1994) (manager/recruiter's statement that "corporate" was "going for ... in the younger–20 to 30 range" because the company was "looking for longevity" admissible under 801(d)(2)(D) where evidence established that manager/recruiter gave older applicant follow-up information about status of application, made hiring recommendations, sent offer letters to candidates, and almost all hiring and firing recommendations were followed; in short, recruiter was "very influential" in hiring process so hiring decisions were within the scope of his employment).

Moreover, regardless of whether the statement constitutes hearsay, it is nonetheless inadmissible under Federal Rule of Evidence 602. Under this rule, a witness must have personal knowledge of a matter in order to testify about the matter. See Fed.R.Evid. 602. Testimony outside a witness' personal knowledge is not admissible. *See id.* Again, the purported statement is incredibly vague and lacks any contextual detail. There is no evidence that the unidentified speaker had first-hand knowledge of defendant's alleged intentions to retain all good employees; plaintiff points to no facts explaining how the unidentified speaker or speakers learned of defendant's alleged assurances that all employees would find jobs within the company; and nothing in the record indicates the basis for the speaker's statement. Without such evidence, the statement, unsubstantiated with any specific facts, is inadmissible. *See Davis v. City of Chicago*, 841 F.2d 186, 189 (7th Cir.1988) (plaintiff's conclusory assertions regarding an alleged custom and policy of defendant, unsubstantiated with specific facts, "fails to indicate any factual basis which would tend to show that he had personal knowledge of the matter" and thus were inadmissible under Rule 602).

In addition to challenging the specific reasons proffered by defendant for the particular selection decisions at issue, plaintiff maintains that defendant, over time, has changed its stated reasons for its selection decisions and that this inconsistency supports an inference of discrimination and shows that defendant's proffered reasons are "fabricated." *See Randle v. City of Aurora*, 69 F.3d 441, 455 (10th Cir.1995) ("shifting of explanations" offered by defendant with respect to rationale underlying employment decision strengthened plaintiff's pretext argument). Plaintiff's evidence in this regard, however, simply does not indicate that defendant has in any way changed its explanations for its employment decisions.

Plaintiff, for example, contends that defendant failed to articulate in its position statement to the EEOC any legitimate nondiscriminatory reasons for its PBM selection decisions, but instead simply denied that age was a factor in those decisions. Defendant has not changed its position, however. It still maintains that age was not a factor in its employment decisions. While defendant did not offer any legitimate nondiscriminatory reasons for its PBM decisions, plaintiff refers the court to no authority (and the court has found

none) suggesting that an employer is required to provide such information to the EEOC. In any event, plaintiff's EEOC charge did not specify any particular positions that formed the basis of his charge and, without such information, defendant's failure to articulate each and every reason for its selection decisions is not surprising. Finally, it is significant that defendant did set forth in its statement to the EEOC its legitimate nondiscriminatory reasons for the one position for which (as defendant learned through its own investigation) plaintiff had interviewed, the administrative services position in Indianapolis. With respect to that position, defendant articulated several of the same reasons it articulates here for the selection of Ms. Willman. In short, plaintiff has simply not shown that defendant's EEOC position statement is in any way inconsistent with its current theory of the case.

Plaintiff also suggests that defendant's "current" legitimate nondiscriminatory reasons are "suspect" because it refused to answer an interrogatory propounded by plaintiff concerning defendant's legitimate nondiscriminatory reasons. In fact, defendant objected to the interrogatory for a variety of reasons, none of which plaintiff ever challenged by communicating with defendant or filing a motion to compel. Defendant's objections to this interrogatory simply shed no light on whether defendant's proffered reasons for its employment decisions are worthy of credence. Similarly, plaintiff's allegation that defendant did not articulate any legitimate nondiscriminatory reasons for its decisions until the filing of the final pretrial order is unavailing. The record reflects that plaintiff did not pursue deposition discovery until very late in the discovery period (indeed, shortly before the final pretrial conference) despite the fact that defendant had identified the relevant decisionmakers in its initial disclosures. Defendant's proffered reasons do not become "suspect" simply because plaintiff makes no effort to discover those reasons until late in the litigation process.

Plaintiff's only remaining argument regarding the pretextual nature of defendant's proffered reasons is that defendant failed to post open and available management positions in the Fort Scott office. There is no evidence, however, that defendant posted management positions at all. In fact, plaintiff states in his papers that "if Defendant's usual employment practices were to post ... management positions, Defendant certainly departed from that practice in this case" as none of the PBM jobs were posted. In other words, there is no evidence regarding defendant's "usual" practice let alone any evidence that defendant departed from that practice. Moreover, while defendant's evidence demonstrates that plaintiff failed to apply for any posted (i.e., non-management) positions, defendant does not suggest that its failure to select plaintiff for a management position stemmed from plaintiff's failure to formally apply for such a position.

For all of the foregoing reasons, plaintiff has failed to raise any issue of fact with respect to whether defendant's proffered reasons for its selection decisions are pretextual. Because no reasonable jury could conclude, based on the evidence in the record, that defendant's proffered reasons are unworthy of belief or that age played any role in defendant's decisions, summary judgment is granted on plaintiff's claims of age discrimination with respect to defendant's selection decisions made after November 1998.

● *Plaintiff's Discharge*

Plaintiff also contends that defendant terminated his employment based on his age. It is uncontroverted, however, that plaintiff's job was eliminated as a result of defendant's decision to close the Fort Scott office. Plaintiff does not dispute that de-

fendant's decision to close that office was motivated by legitimate business considerations and he does not suggest that defendant closed the Fort Scott office in an effort to eliminate the jobs of older workers in general or plaintiff in particular.

For all practical purposes, then, plaintiff's claim with respect to his discharge is duplicative of his failure-to-promote and/or failure-to-transfer claims because plaintiff simply asserts that he would not have been discharged if defendant had found him another position within the organization. In fact, in his papers, plaintiff does not set forth any separate arguments with respect to his discharge-he simply reiterates that defendant's proffered reasons for "failing to retain" plaintiff are pretextual and he references the same "evidence" of pretext that he does in connection with his failure-to-promote claims, namely, defendant's allegedly "inconsistent" and "fabricated" reasons as to why plaintiff was not selected for another position. For the reasons explained above, such evidence is insufficient for a reasonable jury to conclude that defendant made any employment decisions based on age. Summary judgment, then, is granted in favor of defendant on plaintiff's claim that defendant terminated his employment in violation of the ADEA.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion for summary judgment (doc. # 42) is granted and plaintiff's complaint is dismissed in its entirety. Plaintiff's motion to strike portion of defendant's reply brief (doc. # 56) is denied and defendant's motion to strike plaintiff's surreply (doc. # 58) is denied.

IT IS SO ORDERED.